No. 3866

Second Circuit

---

LAWSON ET UX. v. NOSSEK

---

(November 7, 1930. Opinion and Decree.)

---

Foster, Hall, Barrett & Smith, of Shreveport, attorneys for plaintiffs, appellees.

Jackson & Smith and Thigpen, Herold & Cousin, of Shreveport, attorneys for defendant, appellant.

ODOM, J. The plaintiff, Mrs. Lila Lawson, sues defendant for damages resulting from injuries which she received in an automobile accident while riding as a guest in defendant's car, and her husband, Alvin Lawson, the other plaintiff, asks judgment for the amount expended by him for sanitarium, nurses' and doctors' bills; said expenses having been incurred as a result of the injuries sustained by his wife.

Plaintiff makes the usual allegations of negligence and want of due care on the part of defendant, who was driving her own car. Defendant denied generally and specially the allegations of negligence, and affirmatively alleged that, at the time her car overturned she was driving at a moderate rate of speed and in a careful and prudent manner, and set up the special defenses that, just before her car was upset, she suddenly and unexpectedly encountered loose gravel, which rendered the roadbed defective and insecure, and that the accident was "caused by latent defects in the steering mechanism and loose gravel in the road," that she made every effort to stop the car, but that it failed to respond properly to her efforts to steer it, "and the steering wheel gave way." And, in the alternative only, in case the court should hold that she was guilty of negligence and want of due care, she alleged as a defense that, at the time of the accident and injury, she and "Mrs. Lila Lawson were going to Ruston in a joint enterprise for a common purpose and that the automobile was being operated under the joint control of defendant and Mrs. Lawson," and that, if there was negligence, it was the joint negligence of the two.

Defendant has appealed from a judgment against her.

The plaintiff, Mrs. Lawson, and the de-

fendant, Miss Nossek, are business women of Shreveport and have been personal friends for a number of years. For seven or eight years they worked together in one of the leading dry goods establishments of the city. About a year previous to the date on which the accident occurred, Miss Nossek, the defendant, set up in Shreveport a ladies' ready-to-wear establishment of her own, and employed Mrs. Lawson as cashier. Miss Nossek had a woman friend in Ruston, who was entering into a similar business there, and who, on the afternoon of November 14, 1928, telephoned her to come over for the opening on the following day. She accepted the invitation, and immediately invited Mrs. Lawson to go along with her in her car. Miss Nossek had no interest in the business at Ruston, but felt a personal interest in her friend, and thought she might be of some help at the opening by way of suggestions as to how to display the goods.

On being asked the occasion of Mrs. Lawson's going along with her, Miss Nossek said:

"I invited her to go along because she knew the people, had met them in the store. We were very friendly and I just asked her to come and go with us."

She was asked:

"Did you order her to go?"

And she replied:

"No, I invited her to go."

This disposes, we think, of defendant's alternative defense that the parties were going to Ruston in a joint enterprise, for a common purpose. Mrs. Lawson was not invited by the lady in Ruston to attend the opening of her business, but Miss Nossek was, and there is no intimation that there was any suggestion that Miss Nossek invite Mrs. Lawson, or any one else, to come with her. Mrs. Lawson's invitation came from Miss Nossek, and therefore, when Mrs. Lawson accepted the invitation to ride in the car, she became defendant's guest.

The other special defenses that defendant suddenly and unexpectedly encountered defects and loose gravel in the road are disposed of in the statement of facts which follows:

Defendant left Shreveport about 9 o'clock on the morning of November 15th, in her car, which was driven by herself, with Mrs. Lawson and Mr. Louis Davis as passengers, Mrs. Lawson riding on the back seat. When approximately 50 miles east of Shreveport, on the Dixie-Overland highway, which was graveled at that time, Mrs. Lawson suggested to defendant that she was driving too fast, and asked her to slow down. Defendant says she did not hear the request, but does not deny that it was made. Mrs. Lawson says that Mr. Davis also made a similar request. Davis says he does not recall such a suggestion, but said, when asked if his attention was directed to the speed of the car:

"I have the habit when in a car of saying: 'Don't drive so fast.' I am quite nervous."

We have no doubt that both Mrs. Lawson and Mr. Davis did feel apprehensive and warned defendant of the danger of driving too fast. However, the testimony does not warrant a holding that defendant was driving in excess of 35 or 40 miles an hour, which is not excessive in the daytime, on a dry graveled road, in perfect condition, as this one was at the time. We therefore absolve defendant from the charge of driving at an excessive rate of speed.

The testimony discloses that almost immediately after Mrs. Lawson, and probably Mr. Davis, warned defendant against fast

driving, the car began to swerve and zigzag from one side of the road to the other to such an extent that both Mrs. Lawson and Mr. Davis became alarmed. Mr. Davis says he thought defendant "was kidding them" or giving them a "thrill." Mrs. Lawson begged her to slow down or stop, stating to her that, if she did not, the car would turn over. The car continued to swerve and zigzag from one side of the road to the other for a distance of over 100 yards while it was going upgrade, on a perfectly smooth road, slightly curving to the left; the road being, according to the only witness who testified on the point, 40 feet wide. When it reached the crest of the hill, it left the road, turned what the witnesses describe a complete somersault, or changed ends, landed on the right side of the road, upside down, with the wheels up and with the front end back towards Shreveport, or in the direction from which it had come.

There were no defects in the road. It was hard and perfectly smooth, and there was no loose gravel at any point from where the car began to swerve to where it left the road. The movements of this car and its upset were, to say the least, very strange and unnatural. Automobiles, when properly equipped, with steering device in perfect condition, when carefully handled on a smooth dry road, with no defects and hindrances, such as loose gravel, do not swerve, zigzag, run off the road, change end for end, and land upside down, but hold the road. There was, of course, some reason for these strange movements of defendant's car. However, such exceptional movements and upset of an automobile do not lead necessarily to the conclusion that the driver of it was negligent, for there may be reasons for them over which the driver had no control, as, for instance, the steering machinery may be defective without his knowledge, or it may suddenly break down, due to no fault of his, or some foreign substance might strike him in the eye, causing temporary blindness, or a casing blow out; any one of which conditions being sufficient to cause him to lose control, without his fault. Under such conditions and circumstances, it could hardly be said that the driver was guilty of actionable negligence.

The doctrine of res ipsa loquitur, which means "the thing speaks for itself," finds frequent application in automobile accident suits. Under this doctrine or rule, when a thing or instrument which causes the accident and injury is shown to be under the control and management of a person who owes a duty to another, and where it is shown that the accident is such as does not happen, in the ordinary course of events, if those who control such instruments use due care, the presumption arises that the accident was caused by want of due care. But that presumption is not conclusive. In such cases negligence may be inferred from the fact itself, and the rule res ipsa loquitur applies. So that, in automobile accident suits based upon negligence, the plaintiff makes out a prima facie case when he shows that the machine which caused the injury was under defendant's control, that the accident and injury did take place, and that the event would not have happened in the ordinary course of events, if due care had been taken by the driver. The burden is then shifted to defendant to make explanation to show that ordinary care was exercised.

In the case of Sweeney v. Erving, 228 U. S. 233, 33 S. Ct. 416, 418, 57 L. Ed. 815, Ann. Cas. 1914D, 905, the court said:

"In our opinion, res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they fur-

nish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff. Such, we think, is the view generally taken of the matter in well-considered judicial opinions." Blashfield Cyclopedia of Automobile Law, vol. 2, p. 1619; Berry on Automobiles (6th Ed.) vol. 1, sec. 234, p. 208; 7 Words and Phrases, First Series, verbo "Res Ipsa Loquitur," p. 6136.

In the case at bar, plaintiff made out a prima facie case. Defendant, in her efforts to show the exercise of due care, made the following explanation, on being asked how the accident occurred:

"Well, I don't know. We were just driving, I thought on a gravel road, and all of a sudden I lost complete control of the car, the wheel. I tried to stop it and instead of that, it went faster and faster and I could not stop it. Just went from one side of the road to the other. Just swerved. And then I heard them hollering, 'Raye! Raye!' But instead of stopping, it went faster and all I knew was that the car was turned over and I tried to get out. I crawled out from under the car."

Further on, she was asked, "Did you try to steer the car in the middle of the road?" and she replied, "I tried, but I could not."

Defendant makes no explanation at all, except that as above quoted, and we hold that such does not show the exercise of due care.

Common prudence and caution dictate that, when an automobile begins to swerve or zigzag from one side of the road to the other, that when a driver begins to lose control, he should slow down or stop. Defendant realizes that she should have done that. The way to stop an automobile from running is to cut off the supply of gasoline and apply the brakes. Defendant does not say that she did either. She says that she tried to stop the car, but she does not say what method she used to accomplish that purpose. According to her version, the car, instead of slowing down, went "faster and faster." It swerved and zigzagged from one side of the road to the other for a distance of more than 100 yards, and during all that time was running up grade. If she had cut off the supply of gasoline, the car would probably have stopped within a distance of less than 100 yards, in view of the fact that it was running up grade, and, if she had applied the brakes, it could have been stopped in a much less distance. The fact that it ran faster shows conclusively that the engine received more fuel, instead of less, and that the driver failed to make use of the ordinary and necessary methods for stopping cars. Defendant does not state that the steering device gave way, and, as a matter of fact, it did not. It was examined after the accident and found in good condition. When the car turned upside down, the steering wheel dropped off the rod and was found inside the car, but there is no testimony that it came loose while in the hands of the driver. She says she "lost complete control of the car, the wheel." We do not understand that to mean that she lost control of the car because the wheel became loose from the rod. None of the casings blew out. One of the front wheels was wrecked, the spokes broken, but evidently that happened after the car left the road.

Our conclusion and holding is that de-

fendant could have controlled her car and avoided the accident if she had used the means at hand for that purpose, and that her failure to do so shows not only lack of ordinary care, but gross negligence.

"A guest in an automobile is entitled to demand that his host shall exercise ordinary care for safety in driving the car." Jacobs v. Jacobs, 141 La. 272, 74 So. 992, 997, L. R. A. 1917F, 253; Hamburger v. Katz, 10 La. App. 215, 120 So. 391.

The defendant is liable.

## ON THE QUANTUM OF DAMAGES

Mrs. Lawson obtained judgment for $5,000. She moved to amend, and asks that the amount be increased. Defendant contends that the amount is grossly excessive.

Mrs. Lawson is comparatively young, and has been married eleven years. She received a lacerated wound about ten inches long on the right side of the face, extending downward across the cheek from the nose just under the eye to and across the lower part of the outer ear, going through the skin and superficial tissues, and also a lacerated wound above and one below the eyelid. These wounds have healed, but the one across the face left an ugly scar, which is a permanent disfigurement. She was shocked to some extent, but not rendered unconscious. She sustained some bruises and contusions about the body, a fracture of the nasal bones, but these soon healed and left no injurious effect. She has slight paralysis of the muscles of the face and a very slight droop of the right eyelid, but these cause very little inconvenience, if any, and the droop of the lid is not noticeable, except on close inspection. An X-ray showed a slight deformity of the coccyx bone, but we are not convinced that it was brought about by the accident. Mrs. Lawson and her husband both say that she is nervous, does not sleep well, and is easily excited, and has occasional headaches. These conditions no doubt resulted from the shock, but the doctors do not seem to think they are permanent. The testimony does not warrant a holding that she has suffered any permanent injury to the nervous system. We think the amount awarded is ample, but not excessive. The husband was awarded $1,069, which was the amount expended by him for medical, hospital, nurses' and doctors' bills.

Finding no error in the judgment appealed from, the same is affirmed, with costs in both courts.