**GALBRAITH v. DREYFUS et al. \***

**No. 5072.**

Court of Appeal of Louisiana. Second Circuit.

June 29, 1935.

*Rehearing denied July 15, 1935.

Wise, Randolph, Rendall & Freyer and J. N. Marcantel, all of Shreveport, for appellants.

Cook & Cook, of Shreveport, for appellee.

DREW, Judge.

This suit was instituted by Henry Galbraith against George T. Dreyfus and the Standard Accident Insurance Company, of Detroit, Mich., for damages as the result of an automobile accident occurring at a point approximately three miles south of Hope, Ark., on May 19, 1934. Plaintiff alleged that he was a guest in the automobile owned and driven by George T. Dreyfus, and that while the said Dreyfus was operating the automobile the accident occurred, and plaintiff alleged he was injured as a result thereof. The Standard Accident Insurance Company, of Detroit, Mich., is made a party because of the allegation that it issued a policy of insurance on the Plymouth automobile driven and owned by the said Dreyfus, to protect him against damages arising out of any accident.

Defendants deny that the said George T. Dreyfus was guilty of any negligence and deny all of plaintiff's allegations of negligence. In the alternative, they allege that should the court hold the said Dreyfus to be guilty of negligence, then they show that plaintiff was likewise negligent, and that his negligence contributed to the accident; therefore, barring him from recovery. The negligence of Dreyfus, as alleged by plaintiff, is as follows:

That the car went into a ditch owing to the negligence of the said Dreyfus in the following respects:

1. That there is a decline in the road just prior to the point where the automobile turned over, and the road is graveled; also at the bottom of said decline, or near the bottom, there is a decided curve and immediately beyond the said curve the road begins to rise; that the said Dreyfus, in proceeding down the decline, did so at an excessive rate of speed which petitioner alleged to be approximately 50 miles per hour, and was too fast to enable him to turn the curve, considering the loose gravel upon the road, and therefore, as he sought to make the curve, the car hit the loose gravel, and since it was traveling at such a rate of speed, Dreyfus was unable to straighten it, and it finally hit the ditch, and, after running along the edge of it about 100 feet, overturned.

2. That because of the excessive rate of speed at which the said Dreyfus was driving, as set forth hereinbefore, petitioner is informed and believes that in trying to make the curve he placed his foot upon the brake which serves to effectively brake the wheel on the left side, where the road was fairly solid, but the wheels on the right side failed to take hold, causing the car to begin to swerve until it finally hit the ditch, as previously alleged; and that this was also caused by the excessive speed at which the car was being driven, considering the contour of the road and the loose gravel thereon.

Defendants, after denying all alleged negligence on the part of Dreyfus, further answered, alleging that there was no change whatever in the speed or manner of driving the automobile immediately or just prior to the time of the accident, and that the speed and manner of driving the car was apparent and observed by plaintiff, who expressly and tacitly acquiesced therein without any complaint or protest at any time; and in the alternative, should it be found that this defendant was guilty of any or all of the acts of negligence charged in the petition, which are specifically denied, that plaintiff was guilty of contributory negligence in his failure to make any protest or give defendant any warning of whatever danger may have been present, which was clearly apparent to plaintiff in ample time to warn defendant so as to have

avoided any such danger, which contributory negligence bars plaintiff's recovery herein.

They further answered denying they were guilty of any acts of negligence which are charged in plaintiff's petition, but that the occurrence of the accident was wholly and entirely unavoidable.

On these issues, the case was tried below before a jury, which rendered judgment for plaintiff and against both defendants, in solido, in the sum of $8,387. From this judgment, defendants have perfected an appeal to this court, and plaintiff has answered the appeal, praying that the judgment of the lower court be increased to $15,000.

It is admitted that the defendant insurance company is the insurer of the defendant Dreyfus, and the policy is in the record.

Plaintiff and Mr. Dreyfus, hereafter referred to as defendant, left Shreveport on the morning of May 19, 1934, at approximately 5 o'clock, their destination being some place in Wisconsin. It is admitted that plaintiff was a guest of defendant. At about the hour of 7 a. m., they had arrived at the place where the accident occurred, which was approximately three miles south of Hope, Ark., and 85 miles from Shreveport. The first 31 miles of the road out of Shreveport is paved, and the remainder to the place of the accident is a graveled highway. The speed of the car, which was driven by defendant, while on the paved portion of the road was from 50 to 60 miles per hour, and on the graveled portion, 40 to 50 miles an hour, according to the condition of the road. At the place of the accident and for some distance south of it, the road defendant was traveling was a graveled highway 30 feet wide, and in as good condition as the average graveled highway. South of the place of the accident, there was a slight decline in the road and a long sweeping curve, which is not overly sharp. The road at the foot of the decline and at the north end of the curve is approximately straight and level for a distance of 1,200 to 1,500 feet, when the road begins to incline slightly and again curve. The accident happened between the two curves and on a straight and level road, approximately 750 to 800 feet north of the north end of the south curve. Defendant was traveling north and was making a speed of from 40 to 50 miles per hour, when he went into the curve. It is not shown that he decreased his speed. He rounded the curve on his left side of the road, which was outside the curve. He was successful in completing the curve, but when he reached the straight stretch at the foot or north end of the curve, he completely lost control of his car and began zigzagging from one side of the road to the other and so continued for a distance of 600 feet, when he went into a ditch on the side of the road, which was not very deep, being filled with sand and other substances washed in by rains. He continued up the ditch for a distance of at least 100 feet, when the car turned over.

Defendant testified that he did not know what caused him to lose control of his car. After he lost control, he made no attempt to stop the car, did not cut off the gas nor apply the brakes, either of which would have caused the car to stop several hundred feet before turning over. A road machine of the Arkansas Highway Commission had scraped this road on this morning just prior to the time the defendant arrived at the curve. The machine was working out of Hope in a southerly direction and had only worked one side of the road which would cause the loose gravel from the side to be more or less piled in the center of the road.

Whether defendant, on reaching the foot of the decline, which was the north end of the curve, and being at that time on his left side of the road, had attempted to cross back to his right side of the road, and, due to the speed he had reached in going down this incline, was going too fast to cross the gravel piled in the middle of the road, is only problematical, but entirely possible. Cutting across the loose gravel at a speed of 40 or 50 miles per hour could easily have caused defendant to lose control of his car. However, he does not give that as the cause of his losing control. He says he does not know what caused it. The speed at which defendant was driving, from 40 to 50 miles per hour, on a 30-foot graveled highway, where there were no other cars in sight, was not in itself negligence and was not in this instance the cause of the accident.

The very fact that defendant, after losing control of his car, at a time when he was on a straight and level part of this highway, and not regaining control of it until he had traveled zigzagging from one side of the road to the other for a distance of 700 feet, and without slowing down until he had turned the car over in a ditch, makes out a prima facie case of negligence on his part, and the doctrine of res ipsa loquitur

applies; and it is incumbent upon defendant to explain the cause of the accident and show that he at least was using ordinary care. Monkhouse v. Johns (La. App.) 142 So. 347; Lawson v. Nossek, 15 La. App. 207, 130 So. 669.

The last-cited case is so similar to the one at bar that we feel justified in quoting from the opinion which was rendered by this court. We quote as follows:

"In the case at bar, plaintiff made out a prima facie case. Defendant, in her efforts to show the exercise of due care, made the following explanation, on being asked how the accident occurred:

"'Well, I don't know. We were just driving, I thought on a gravel road, and all of a sudden I lost complete control of the car, the wheel. I tried to stop it and instead of that, it went faster and faster and I could not stop it. Just went from one side of the road to the other. Just swerved. And then I heard them hollering, "Raye! Raye!" But instead of stopping, it went faster and all I knew was that the car was turned over and I tried to get out. I crawled out from under the car.'

"Further on, she was asked,

"'Did you try to steer the car in the middle of the road?'

"And she replied:

"'I tried, but I could not.'

"Defendant makes no explanation at all, except that as above quoted, and we hold that such does not show the exercise of due care.

"Common prudence and caution dictate that, when an automobile begins to swerve or zigzag from one side of the road to the other, that when a driver begins to lose control, he should slow down or stop. Defendant realizes that she should have done that. The way to stop an automobile from running is to cut off the supply of gasoline and apply the brakes. Defendant does not say that she did either. She says that she tried to stop the car, but she does not say what method she used to accomplish that purpose. According to her version, the car, instead of slowing down, went 'faster and faster.' It swerved and zigzagged from one side of the road to the other for a distance of more than 100 yards, and during all that time was running up grade. If she had cut off the supply of gasoline, the car would probably have stopped within a distance of less than 100 yards, in view of the fact that it was running up grade, and, if she had applied the brakes, it could have been stopped in a much less distance. The fact that it ran faster shows conclusively that the engine received more fuel, instead of less, and that the driver failed to make use of the ordinary and necessary methods for stopping cars. Defendant does not state that the steering device gave way, and, as a matter of fact, it did not. It was examined after the accident and found in good condition. When the car turned upside down, the steering wheel dropped off the rod and was found inside the car, but there is no testimony that it came loose while in the hands of the driver. She says she 'lost complete control of the car, the wheel.' We do not understand that to mean that she lost control of the car because the wheel became loose from the rod. None of the casings blew out. One of the front wheels was wrecked, the spokes broken, but evidently that happened after the car left the road.

"Our conclusion and holding is that defendant could have controlled her car and avoided the accident if she had used the means at hand for that purpose, and that her failure to do so shows not only lack of ordinary care, but gross negligence.

"'A guest in an automobile is entitled to demand that his host shall exercise ordinary care for safety in driving the car.' Jacobs v. Jacobs, 141 La. 272, 74 So. 992, 997, L. R. A. 1917F, 253; Hamburger v. Katz, 10 La. App. 215, 120 So. 391.

"The defendant is liable."

The facts in the case before us are even stronger than those in the case from which we have quoted, for the reason that the defendant herein traveled more than twice as far, after losing control of his car, than did the defendant in the Nossek Case. He did not cut off the gas nor apply the brakes. Had he removed his foot from the accelerator, the car would have stopped in the 700 feet that it traveled before turning over.

Defendant showed that his car had been thoroughly checked the day before the accident and was in good condition, which places the blame and cause of the accident entirely upon his lack of exercise of ordinary care in not making use of the means at hand to stop the car, after he had lost control of it. He owed such care to his guest, and, in his failure to exercise that care, made himself liable to plaintiff for the damages he received.

250

Due to our finding, as above set forth, the plea of contributory negligence passes from the case.

The danger of the loose gravel, if any there was, was not apparent to either plaintiff or defendant until they had negotiated the curve. If the loose gravel was the cause of the loss of control of the car, when it became apparent to the occupants of the car it was too late for plaintiff to protest, and certainly, after the car began zigzagging, it was too late. However, if plaintiff was called upon to protest and did not, when rounding the curve, it could not bar his recovery, for the reason that contributory negligence is not a bar to recovery unless it is a proximate cause, and in the case at hand the sole and only proximate cause of the accident was the lack of proper care by defendant in not stopping his car after he lost control of it. It was not the fact that he lost control that caused the accident, but the fact that he did not stop after losing control, although he had a distance of 700 feet within which to stop.

Defendants seriously urge that the damages allowed to plaintiff are excessive, and plaintiff likewise urged that they are inadequate.

Plaintiff had incurred medical and hospital bills, up to the time of trial, amounting to $1,063. The lower court allowed him, including this bill, the sum of $8,387. We are convinced the amount allowed is adequate, but not excessive.

There is no dispute as to the injuries received by plaintiff nor as to the extreme suffering he underwent. He received a crushing fracture of the body of the first lumbar vertebra. He remained in the hospital for three months and twelve days and has been unable to perform any kind of work since. At the time of trial, which was February 4, 1935—nearly nine months after the accident—he was able to walk with a stick, but tired very easily, and, when tired, suffered with his back. It is undisputed that at the end of eighteen months after the date of the accident he will be as well as he can ever hope to be, and at that time will have a disability of from 15 to 25 per cent. Plaintiff is 64 years of age, is single, and, prior to the accident, was a robust, healthy man. When first brought to the hospital the day of the accident, he was placed upon a specially constructed bed which was raised in the middle, leaving the head and foot low and the back raised. He was forced to lie on his back in this position for a period of several weeks, in fact, for almost a month. This was very painful. He was then placed in a plaster cast which covered his entire body from his hips to his arms. The weather was warm, and this cast caused plaintiff a great deal of suffering. The cast was kept on plaintiff for about five weeks, at which time he developed an acute gall bladder trouble, due to the posture in which he was required to lie. The cast was removed and an operation performed for this trouble. He was very sick and his life despaired of. At the time of trial plaintiff was still wearing a cast or brace, which was more on the order of a corset, and was very uncomfortable. Plaintiff suffered about as much as it is possible for a human being to suffer and live. Prior to the accident, he was a strong, active, powerful man, engaging in fishing and hunting. His earning capacity was not large, and he had not had a job for some time, but was capable of earning ordinary wages which his injury will prevent him from doing in the future.

In the case of Rigby v. Ætna Casualty & Surety Company, 151 So. 119, where the injury to plaintiff was similar, but the suffering not nearly so great, we allowed $15,000, but in the Rigby Case the plaintiff was a comparatively young doctor with an earning capacity of $6,000 to $7,000 a year, and, due to his profession, was not entirely deprived of his ability to carry on, being only limited as to the amount of surgery he could do. Under all the circumstances, and considering the difference in earning powers, and the age of plaintiff herein and the plaintiff in the Rigby Case, we are of the opinion that the amount allowed is correct.

Plaintiff and appellee here has prayed for damages for the reason that the appeal taken herein was frivolous, and for the purpose of delay. We do not consider, nor would we be justified in finding, that the appeal in this case was taken for delay. The case was seriously contested in this court by defendants, and under the allegations in the pleadings, the defense was not wholly without merit. The prayer for damages for frivolous appeal is therefore overruled.

The judgment of the lower court being correct, it is affirmed, with costs.