HARRELSON v. McCOOK et al.

No. 6172.

Court of Appeal of Louisiana. Second Circuit.

July 5, 1940.

Rehearing Denied Aug. 1, 1940.

Writ of Certiorari and Review Denied Oct. 9, 1940.

———◆———

Cook, Cook & Egan and Albert T. Hughes, Jr., all of Shreveport, for appellants.

Harry V. Booth and L. L. Lockard, both of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff, the guest passenger of A. J. McCook, was injured when the new Buick automobile of the latter left the highway, descended into a parallel ditch and twice turned over. He sues McCook and his insurer, the Employers Liability Assurance Corporation, to recover damages on account of physical injuries, pain and suffering, physicians' bills, for loss of earnings to the time of filing suit and for permanent impairment of earning capacity.

Plaintiff did not specifically charge that the action of the car in leaving the highway and turning over was attributable to the negligence of McCook. The petition, on this score, is conspicuously silent. It is alleged that the car was under the exclusive control and operation of McCook and while being driven by him it left the highway, ran into the ditch and turned over. The omission of allegations of negligence was not due to inadvertence. Plaintiff's theory is that the facts of the case, so far as known to him and as reflected from his petition, warrant the application of the res ipsa loquitur rule.

Defendants excepted to the petition as disclosing' neither a right nor a cause of action and as being vague. These exceptions were sustained with leave to amend. The court ruled that the allegations were insufficient to bring the case within the doctrine of res ipsa loquitur, and this being true, specific charges of negligence were indispensable to the petition's efficacy.

Plaintiff protested against the court's ruling on the exceptions of no cause and no right of action, but to obviate dismissal of the suit, tendered an amendment in which it is alleged that the highway for at least one-half mile on each side of the locus of the accident is straight with no obstruction to vision or traffic thereon; that the center of the road is slightly higher than its edges; its surface rough, but when wet is slippery, and, therefore, operating an automobile thereon safely exacts of the driver the maximum of care and attention. Further, on information and belief, plaintiff alleges that McCook was guilty of the following acts of negligence, which, singly or together, caused the accident, to-wit:

"That defendant, A. J. McCook, was running in excess of 40 miles per hour, an excessive speed on this saddle-back, slick and rough road.

"That said defendant, A. J. McCook, was not attentive to the steering of his automobile or keeping close attention to same and a firm grip on the steering wheel, and that he allowed it to slide off the slick highway, or to be diverted by a bump, or he allowed his lookout to wander from the road and drove it off into the ditch."

Defendants admit the occurrence of the accident at the time and place alleged, but deny that it happened because of any negligence or carelessness of McCook. They aver that it was due to the sudden and unforeseeable skidding of the car while being driven in a prudent manner. In the alternative, defendants plead that plaintiff was contributorily negligent and therefore is barred from recovery, in that he acquiesced in and approved the manner of operation of the car and its speed at the time of and prior to the accident. They also admit that plaintiff was injured, but not to the extent asserted by him.

Defendants appealed from a judgment against them for Two Thousand Ten and no/100 ($2,010) Dollars. Plaintiff here asks no increase in the award.

The trial judge has favored us with a written opinion wherein he discusses quite logically and fully the testimony and the issues of the case. He reached the conclusion that in view of the road's slippery surface, at the time of the accident, the rate of speed at which McCook was then driving was excessive and that this speed proximately caused the car to skid; and, in addition, that he was inattentive to his driving. These acts of negligence, the court specifically held, caused the accident. The plea of contributory negligence was rejected.

Plaintiff is engaged in the sale, repair and installation of refrigerating equipment and store fixtures. He was employed by McCook to install some fixtures for him in the village of Belcher, twenty miles north of Shreveport. McCook suggested to plaintiff that they make the trip to Belcher in his new Buick car as he desired to acquire more mileage thereon. This was satisfactory to plaintiff. He rode beside McCook on the front seat. Rain was then falling and continued to fall to the time and place of the accident. The time was 8:30 A. M. The highway over which they traveled, excepting some concrete sections, is surfaced with what is commonly referred to as "blacktop". It becomes very slippery from rainfall. This sort of topping surfaced the road where the accident occurred. The shoulders are three feet wide.

McCook is positive the car skidded and became uncontrollable while going at a speed not more than forty (40) miles per hour, which he contends was not then and there excessive nor unreasonable. Plaintiff is as equally certain that the car did not skid prior to loss of its control by McCook. There were no other eyewitnesses. Plaintiff did not know the rate of speed the car was traveling when its right wheels left the road. He guessed that the speed was around forty (40) miles per hour, however, he was not in a position to accurately gauge the speed as the car was closed and rain was then falling, unless he had been watching the speedometer, and this he was not doing.

McCook also testified that immediately prior to the accident he was driving along the road's center, "a little over on the other side", and desiring to get on his proper side, undertook the appropriate move to do so. It was then, he says, that the car began to skid sidewise to its right. He further testified:

"Naturally, when that started to skid I caught hold of the steering wheel and pulled it around and shot the gas into it to try to throw it back on the road after it started to skid."

" * * * you know when it starts skidding, when it did, I tried to pull the car around; it skidded out to the edge; I caught hold and pulled the car around and shot the gas to it to try to pull it back on the road. You know when a car skids you are helpless, you cannot do a thing in the world with it."

He also says that the front wheels left the road first and that he "fought the car until it went over the embankment." We interpret this as meaning that he strenuously endeavored to drive the car back upon the highway until it rammed the opposite ditch bank. He finally says that it "puzzled me how it happened", and that the car came to stop about forty (40) feet from the point it left the road.

Plaintiff does not know what caused the car to leave the road. He became aware of its abnormal movements before it went into the ditch.

The testimony discloses that the right wheels of the car traversed the wet dirt shoulders a distance of approximately seventy-five (75) feet before the car left the road entirely and descended into the ditch; that it collided with a small stump in the bottom of the ditch or on the slope of its eastern bank, somersaulted twice and rested on all wheels facing south, a distance of approximately one hundred (100) feet from where it went into the ditch. From these antics, the trial court decided that the car's speed was considerably in excess of forty (40) miles per hour. We concur in this conclusion. We quote with approval the following summary of facts and conclusions of the trial judge, viz.:

"Defendant states that he had been driving at fifty miles per hour when he slowed down some two or three miles south of the scene of the accident. That while driving in a closed car you will naturally increase your speed; that he did not know how fast he was going at the time of the accident. But taking the word of defendant, we think that from the time he had slackened his speed to the point of the accident he had unconsciously increased his speed,

and while on a portion of the repaired highway he slipped off the highway and either in the act of slipping off of the pavement, and/or after one set of his wheels were on the shoulder of the road he 'shot the gas' to the car and thereby increased his speed, and being unable to turn the car back into the road, caused it to go into the ditch. We are satisfied from defendant's own testimony and the distance the car travelled after leaving the highway, its overturning twice and reversing its direction that defendant was travelling at a higher rate of speed than forty miles per hour, and, if only thirty-five or forty miles per hour, considering the condition of the road, that it was this speed that caused the automobile to skid and leave the road, and, this we consider an act of negligence.

"Defendant further testified that after the wheels of his automobile had reached the shoulder of the road he 'shot the gas' to it and thereby increased his speed in an attempt to make the automobile go back upon the road. Our view of this incident is that the defendant was further negligent for the reason that we understand that when the wheels of an automobile slip off the road while going at a rapid rate of speed one should slacken his speed before attempting to make the automobile go back upon the pavement when the pavement is higher than the shoulder, which is usually the case, and without decreasing the forward motion of the car. The effort to cause the front wheels to 'take to the road' causes the rear end of the car to go to the right, and in most cases results in the overturning of the automobile.

"The mere skidding of an automobile upon the highway is not negligence per se, unless accompanied by other facts. It was so held in Barret v. Caddo Transfer & Warehouse Co., 165 La. 1075 [116 So. 563, 58 A.L.R. 261]; but at the same time it was held that the driving of a loaded truck on a sloping street, which was slippery, at a rate of eight or ten miles per hour was an act of *negligence;* and a right-angle turn therefrom into an alley was an act of *recklessness.*

"In Lawson v. Nossek [15 La.App. 207], 130 So. 669 [670], the defendant was absolved from negligence in driving 'on a *dry graveled road, in perfect condition',* but held negligent for failure to slacken speed by the application of the brakes after the automobile began to swerve from side to side of the road.

"In Siren v. Montague [La.App.], 142 So. 196, [197], the defendant was relieved of negligence while driving his truck upon the ramp '*he kept his truck under proper control, going at a slow rate of speed, it skidded into the truck owned by Frey & Co.'*

"A reading of these cases show that where an automobile driver is otherwise careful, the mere skidding of an automobile is not negligence; but where the skidding is the result of improper driving, such as excessive speed on a slippery road known to the driver, or inattention or improper control of the automobile, which causes the same to skid, is negligence. Hence, for these reasons we think that the evidence in this case clearly shows that the defendant was negligent in driving at the speed at which he was going and was inattentive to his driving, which negligence was the cause of the accident and injury to plaintiff."

Plaintiff testified that he remonstrated two or three times with McCook, prior to the accident, about the excessive speed of the car, and that he then slowed down some. McCook admits that he did reduce his speed two or three miles south of the accident, but denies that this was done because of any protest on part of the plaintiff, and denies that any protest was made by him. The lower court held for plaintiff on this issue of fact. The burden devolved upon defendants to establish by a preponderance of the testimony the plea of contributory negligence advanced by them. The trial judge did not think they had successfully met this burden. We could assign no satisfactory reason for disagreeing with him.

The lower court rejected the demand for loss of earnings on the ground that it was not supported by adequate proof. The correctness of this conclusion is now conceded by plaintiff's counsel. Two Thousand ($2,000) Dollars was awarded for pain, suffering and impairment of ability to perform work requiring physical exertion. Ten ($10) Dollars was allowed to cover the expense of an X-ray picture.

Defendants contend seriously that the judgment is excessive when the nature and extent of plaintiff's injuries are considered. Anent the injuries, their extent and nature, and the testimony bearing thereon, the lower court said:

"Plaintiff's personal injury consisted in a severe lick on the head, a severe sprain

of the neck and shoulder muscle, some slight abrasions on the hand and shin. The latter healed within a short time after the accident. Plaintiff suffered headaches intermittently for some six or eight weeks. At the time of the trial, plaintiff appeared to have a stiff neck, causing his head to be held to the right. He had the complete use of his right arm forward and backward and could raise same laterally almost horizontal with the floor, but on forcing the arm higher it would cause him intense pain. While plaintiff was demonstrating this movement tears came into his eyes as his arm was raised above a horizontal position, and with like results when the doctor was demonstrating a like movement with plaintiff's right arm.

"Plaintiff claimed that the muscles attached to the right scapular bone were torn loose, which caused the scapular to be several inches higher than the opposite side. Plaintiff's medical witnesses, two in number, testify to this fact, and in addition that there is marked atrophy of the muscles of the neck on the right side. This is emphatically denied by defendants' two medical experts, one of whom treated plaintiff from the date of the injury for a period of more than two months. The X-ray was negative as to bone injury. Dr. Rigby, who treated plaintiff, states that the only injury to plaintiff was a sprain or stretching of the muscle of the neck. The medical testimony is hopelessly conflicting, but from what we saw of plaintiff we are satisfied that he suffers considerable pain especially in raising his right arm laterally above a horizontal position.

\* \* \*

"We are not satisfied that the muscles were torn loose from the scapula, causing the depression above the collar bone, as we note that by elevating the shoulder and bringing it forward slightly that this will show such a depression above the scapula in one who is not injured. One of the doctors testified that if there is a question about this matter, that a neurologist should be consulted. Neither party hereto asked for such an examination, but it will be granted on the application of either.

"Taking the evidence as a whole, we are convinced that plaintiff suffered and suffers considerable pain, and that the limited motion of his arm has reduced his earning capacity to some extent, but not to the extent claimed by plaintiff, and we have concluded that an allowance of $2,000.00 will amply cover all damages suffered, as we are able to appreciate them."

■ This summation, in our opinion, does justice to both sides, and based thereon, the award does not appear excessive.

Plaintiff complains of the lower court's ruling that the allegations of the original petition did not bring the case within the res ipsa loquitur rule, and urges a ruling of this court thereon.

■ This rule has been frequently invoked in cases arising in this state during the past two decades. It has been rejected in some but allowed in others. Its operative effect has been enlarged beyond its original purview. The dictum of recent decisions of this and other courts of the state has removed all doubt that cases of the character and with facts such as appear in the instant one, fall within the rule. Coffey v. Ouachita River Lbr. Co., Inc., et al., La.App., 191 So. 561-565; Dunaway v. Maroun et al., La.App., 178 So. 710; Galbraith v. Dreyfuss et al., La.App., 162 So. 246; Monkhouse v. Johns, La.App., 142 So. 347; Lawson et ux. v. Nossek, 15 La.App. 207, 130 So. 669; Livaudais et ux. v. Black, 13 La.App. 345, 127 So. 129; Hamburger v. Katz et al., 10 La.App. 215, 120 So. 391.

■ The Supreme Court in Loprestie v. Roy Motors, Inc., et al., 191 La. 239, 185 So. 11, through Justice Land, discusses this rule at length. The petition in that case failed to charge the defendant with specific acts of omission or commission from which the accident resulted, and also did not allege that plaintiff was free of negligence as a contributing cause of the accident which involved two automobiles. Both points were overruled. The court specifically held that where the rule is applicable, it was not necessary to the disclosure of a cause of action to allege specific acts of negligence on the part of the defendant. Lykiardopoulo v. New Orleans & C. R. Light & Power Company et al., 127 La. 309, 53 So. 575, Ann.Cas.1912A, 976 is cited and quoted from. The court's holding on the question in the Loprestie case is well expressed in the second paragraph of the syllabi, viz.:

"Where a plaintiff cannot be expected to have any information as to the causes of an accident, while defendant must be assumed to be fully informed, and the accident is of the kind which ordinarily does not occur when due care has been

exercised, 'res ipsa loquitur,' which is a presumption of negligence, arises from the fact itself of the accident, and plaintiff need not allege or prove particular acts of omission or commission from which the accident resulted, since the accident itself makes out a prima facie case and burden is on defendant to show absence of negligence."

See Tulane Law Review, Vol. 12, page 125.

For the reasons herein assigned, the judgment ·appealed from is affirmed.