ELLIS, Judge.
' Plaintiff bases its case upon a subrogation clause in one of its policies and seeks to recover a subrogation claim against Dallas Stutes arising out of an automobile accident.
The defendant had borrowed the vehicle of Mr. and Mrs. Lewis A. Domingue, and while driving to work in it the vehicle was badly damaged in an accident. When amicable settlement was not possible, suit was filed by Mr. and Mrs. Domingue against Texas Mutual Insurance Co., which filed answer and made a legal tender by depositing $1,264.37 with the Clerk of Court. When the Texas Mutual Insurance Company became insolvent, Domingue accepted the legal tender. A judgment in the amount of $3,095.84 was secured against the insurance company after the’ instant suit had been filed. Under the aforementioned subrogation clause the Texas Mutual. Insurance Company became subrogated to all the rights of its insured, Lewis A. Domin-gue, against the driver, Dallas Stutes, and accordingly filed the instant suit to recover from Dallas Stutes, who had allegedly caused the accident by his negligence, the amount of the legal tender which had been accepted by Lewis A. Domingue.
Upon plaintiff being placed in receivership, the Court recognized the receiver, Will G. Knox, as party plaintiff. Judgment was rendered in favor of the defendant in the trial court and the plaintiff appealed. Defendant filed a motion to dismiss the appeal on the grounds that Will G. Knox had actually resigned his position as receiver for the plaintiff company prior to the trial on the merits and J. D. Wheeler had succeeded him as receiver. Therefore, the defendant urged that no proper party plaintiff was before the court. The court of appeal sustained defendant’s motion and remanded the case so that J. D. Wheeler might be joined as party plaintiff, and the case was once again submitted for trial on the merits. The lower court again gave judgment in favor of the defendant and the plaintiff now appeals from this judgment.
The facts seem to be fairly clear .and undisputed. Several weeks before the accident the defendant bought an automobile from Lewis A. Domingue, the Hudson dealer in Lafayette, La., and when the new automobile was brought in for repairs and a general check-up, the repairs were not completed before the defendant had to return to his work at the Rigoletts. Therefore, Mr. Domingue lent his own automobile to the defendant free of charge, until the repairs should be completed. The defendant was driving to work alone after daylight on the two-lane concrete highway leading from New Orleans to the Mississippi Gulf Coast. There were no other automobiles in sight and having just negotiated a slight curve he was approaching a draw bridge, when suddenly his right front wheel ran off the pavement. The shoulder was narrow and the defendant became frightened of the expanse of water to his right and the presence of large pieces of concrete on the shoulder which had been *623 placed there to protect the roadbed from the tides. He jerked the wheel hack onto the highway with such force that the car was thrown sideways and skidded to the other side of the road where it somersaulted twice and came to rest near the water at the base of the roadbed.
The defendant testified on cross-examination as follows:
“Q. How did you happen to run off the highway? A. Well, I would not know that. I mean it surprised me when I did. I been driving for over thirty (30) years and that is the first time it happened to me.
“Q. In other words, you just drove off the highway without noticing you were driving off the highway, is that it? A. I was watching the bridge at the time that I made the curve.
“Q. When did you first see those rocks you are talking about that was on the right side of thfe highway? A. Well, they was stacked along there from the bridge a good distance just before I went off there.
“Q. And you had seen them before you went off? A. Yes. I seen when I first made the curve.”
By defendant’s admission it is apparent that he was aware of the presence of the concrete blocks before he ran off the road. He also admitted that he was not keeping the proper lookout for he said “I was watching the bridge at the time that I made the curve,” and that he was “surprised” when his right front wheel ran off the pavement. The defendant admittedly had driven over this same. highway several days before the accident occurred. It was daylight at the time of the accident and no cars were in sight and the defendant offers no valid reason for allowing the front wheel to run off the pavement at such a dangerous point, in fact, he urges the very dangerous nature of the locale, i. e., the narrow shoulder, the presence of the concrete blocks and the water at the base of the roadbed as a defense to the present suit. He contends that had he run off the road under normal conditions he would have been able to slow down and regain control of his car with little difficulty. However, the defendant is bound to take the stationary factors into account and these factors did not present an emergency such as would relieve him of negligence. If anything, these factors increase the degree of the defendant’s negligence. In failing to keep a proper lookout and allowing the front right wheel to run off the pavement under the circumstances presented amounts to negligence per se. Hamburger v. Katz, 10 La.App. 215, 120 So. 391; Lawson v. Nossek, 15 La.App. 207, 130 So. 669; Monkhouse v. Johns, La.App., 142 So. 347; Gomer v. Anding, La.App., 146 So. 704; Galbraith v. Dreyfus, La.App., 162 So. 246; Harrelson v. McCook, La.App., 198 So. 532.
 There is no need to apply the doctrine of res ipsa loquitur as was done in the very similar case of Fetterly v. McNeely, La.App., 77 So.2d 757, since the negligence of the defendant is clearly proven without the need of employing a legal presumption. There is no dispute over the question of whether or not the defendant’s use of Lewis Domingue’s car amounted to a loan for use under Article 2893 of the LSA-Civil Code of 1870 or a bailment. It is not necessary to determine this question, for even if the defendant is considered a bailee, which is the view most favorable to him, he is still answerable for his negligence, as:
“ * * * The return of the automobile by the bailee in a damaged condition raises a presumption of negligence, and makes a prima facie case, and puts the burden on the bailee, or justifies an inference of negligence when the damage is such as does not ordinarily occur without negligence * * Blash-field, Cyclopedia of Automobile Law and Practice. Vol. 7, p. 661, Sec. 4673.
“Ordinarily a borrower or bailee of a car is not liable for the usual wear and tear on the car, or damage to the car which was not caused by bailee’s *624 fault or negligence, but he is liable for damages arising from his negligence, misuse of the car or from gross want of skill in its use * * Blashfield Cyclopedia of Automobile Law and Practice, Vol. 7, p. 638, Sec. 4665. See Meine v. Mossler Auto Exchange, 10 La.App. 65, 120 So. 533.
For the reasons assigned the judgment of the lower court is hereby reversed and it is ordered that there now be judgment for the plaintiff .as prayed for.