CHASEZ, Judge.
This is a suit by Emmco Insurance Company, as the subrogee under its policy of insurance issued to Benny Alexander, Jr. against Benny Alexander, Sr., the father of the minor Reginald Alexander, for damage done to a vehicle owned by Benny Alexander, Jr. while operated by Reginald Alexander. Judgment was rendered in favor of defendant, and plaintiff now takes this appeal.
These facts are clear. On June 23, 1965 the brothers, Benny Alexander, Jr. and Reginald Alexander, drove in Benny’s car to a bar known as Johnson’s Place on State Highway 44, in the Parish of St. John the Baptist. After they were there for a short time Reginald asked Benny if he could use Benny’s car. Benny refused his brother this permission but Reginald went ahead without his brother’s knowledge and used the car. The record discloses that while using the car Reginald became involved in a one vehicle accident causing $1,124.50 damage to his brother’s car. The amount of damage was stipulated between counsel at trial, as was the fact that Emmco Insurance Company was subrogated to the rights of Benny Alexander, Jr. in this matter.
*116 In his judgment the trial judge made these statements in support of his decision to dismiss plaintiff’s suit.
“Benny Alexander, Jr. testified that he and his brother both were members of the same household and each of them owned an automobile of fairly recent vintage and used these vehicles interchangeably without a great deal of concern as to whether or not they had one another’s permission to use the vehicle. Benny Alexander, Jr. testified that his brother, Reginald Alexander, had a new Mustang, which he used on countless occasions without securing his brother’s permission and that the same was true for the vehicle in question, namely a 1963 Pontiac, which was approximately two (2) years old at the time of this accident, and which was used by Reginald Alexander on countless occasions when it happened to be convenient to do so. It appeared from the testimony of Benny Alexander, Jr., that the relationship between he and his brother was quite close, but contained the usual brotherly disputes and arguments which lasted for short durations. Considering the over-all candid testimony of Benny Alexander, Jr. there appears that on the night in question, one (1) such brief argument took place in the lounge and that neither brother attached a great deal of significance to it, surely not to the extent which would be required to take Reginald Alexander out of the scope of the policy provisions for collision damage.”
We cannot agree with these conclusions. While it is true that Benny Alexander, Jr. admitted that on many occasions he and his brother had used each other’s vehicles, sometimes even without asking one another, the fact remains that on this particular occasion Benny refused to allow his brother to use his car. He testified:
“Q. How did he come about to be driving the car at that time ?
“A. He used it without my permission.
“Q. How did this come about? When did he take the car ?
“A. He asked to use it and I told him he couldn’t and he went out and took it anyway.
“Q. Where were you when this initially happened ?
“A. I was at Johnson’s Place in La Place.
“Q. And did he come up to you and say, ‘Can I use the car’? What were the facts ?
“A. He asked to use it, and I told him he couldn’t. About five minutes later he was gone.
“Q. Had he used your automobile in the past at any time ?
“A. Yes, he had.”
BY THE COURT:
“How often ?”
BY THE WITNESS:
“Pretty regular.”
BY MR. FAULKNER:
“Q. Going back to where we were a minute ago, why on this particular occasion had you told him not to use the car?
“A. I had to use the car myself at that particular time.”
Thus we must hold that on this occasion Reginald Alexander was not an authorized user of the vehicle within the collision coverage provisions of the insurance contract in force between the plaintiff Emmco and Benny Alexander, Jr. at the time the accident occurred.
As the subrogee of the owner of the vehicle Emmco must carry the same burden as the owner would have had to carry, to support a judgment in its favor, i. e., it must prove negligence on the part of the minor driver, Reginald, imputable to his father, the defendant.
*117 In support of its case appellant attempts to rely on the provisions of LSA-C.C. arts. 2893-2899. These articles appear under XII Of Loan, Chapter 1 Of the Loan For Use, and hence by their very nature do not pertain to our situation. Plaintiff himself has argued, and we have agreed with him, that there was no agreement between the brothers that Reginald could use the car on this occasion. Article 2893 speaks of a loan for use as an agreement by which a person delivers a thing to another and hence neither it nor the articles which follow it apply herein.
We find however that the facts as presented do involve the application of the theory of res ipsa loquitur. Although plaintiff has not alleged this theory as part of his case, the jurisprudence is clear that this doctrine is merely an evidentiary rule, and need not be specifically pleaded. The applicability of this doctrine is determined in each case at the conclusion of the trial thereof in conformity with the proof adduced by the respective litigants. Hebert v. Valenti, 179 So.2d 647, La.App. 4 Cir., 1967, and cases therein cited.
In commenting on the applicability of res ipsa doctrine in Louisiana, the Court in Fetterly v. McNeely made these statements :
“The concept of this doctrine in Louisiana, found in the written reasons for judgment, is stated in 12 Tulane Law Review page 125:
‘The common law generally applies the doctrine whenever injury has been caused by an instrumentality (a) which was under the control of the defendant, and (b) which does not ordinarily cause injury unless it is negligently used. This is Louisiana’s position also, for the Supreme Court recently said in the case of Bruchis v. Victory Oil Co., 179 La. 242, 153 So. 828, “more precisely the doctrine of res ipsa loquitur asserts that whenever a thing which produced an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of the injury itself will be deemed evidence to support recovery.” ’
“Our Supreme Court, in Loprestie v. Roy Motors, Inc., 191 La. 239, 185 So. 11, 13 stated:
‘The doctrine of res ipsa loquitur is based upon the legal proposition that where the defendant is shown to be in a better position to explain the accident than the plaintiff, and where the circumstances of its occurrence indicate that plaintiff cannot be expected to have any information as to the causes of the accident, which is of a kind that does not occur ordinarily when due care has been exercised, “the rule of evidence is that the accident speaks for itself — res ipsa loquitur — that is to say, that a presumption of negligence arises from the fact itself of the accident”.’
“Also see Hamburger v. Katz, 10 La.App. 215, 120 So. 391, 392; Lawson v. Nossek, 15 La.App. 207, 130 So. 669.” 77 So.2d 757, 759.
Reginald Alexander was not called upon to testify at the trial of the case, therefore the only evidence in the record as to how the accident occurred, is the testimony of Deputy Alexander Oncale, the investigating officer at the scene of the accident. He testifed as follows:
“Q. Deputy Oncale, on June 23, 1965, did you have occasion to investigate an automobile accident?
“A. Yes, I did
“Q. Could you tell us where the accident happened and the party involved, or the parties involved, in the accident ?
“A. Well, it happened on State Highway 44 about 600 feet from 44 and La. 2060-3. This vehicle had to be *118 driven at a high rate of speed because it crossed the highway, hit the embankment and hit the fence.
“Q. I understand there was only one vehicle involved in the accident.
“A. One vehicle and one person.
“Q. You remember who the person involved in this accident was ?
“A. Reginald Alexander.
“Q. He was the driver of the automobile?
“A. Yes.
“Q. Do you remember if this was a 1963 Pontiac involved in the accident?
“A. Yes, it was a GTO, I think, or a Grand Prix.
“Q. Did your investigation reveal the possibility of any other vehicle at any time being involved in the accident ?
“A. No, no other vehicle at all.”
Applying the rationale of the Fet-terly decision, supra, we note that the accident in question was one which does not occur ordinarily where due care has been exercised, and circumstances of its occurrence indicate that plaintiff cannot be expected to have any information as to its cause, hence the applicability of res ipsa.
Reginald Alexander was alone in the vehicle when the acccident occurred. There was no evidence that any other vehicle was involved. From the position of the vehicle after the accident it was apparent that the car simply ran off the highway. Disregarding the opinion of the police officer as to excessive speed, we are left with the logical presumption that there was some negligence on the part of Reginald that resulted in the accident. Although this presumption was in no way conclusive it was not rebutted by any evidence by the defendant. Further the failure of the defendant to call his son to testify as to the facts involved, raises a second presumption that his testimony would have been unfavorable to the defendant.
In any event we find that the plaintiff has been successful in establishing the presumption that there was negligence on the part of Reginald Alexander, and defendant as Reginald’s father is liable for the negligence of his minor son. LSA-C.C. art. 2318, Plotkin v. Marino, 192 So.2d 381, La.App. 4 Cir. 1966.
For the reasons hereinabove stated the judgment of the trial court dismissing plaintiff’s suit is reversed; and it is now ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Emm-co Insurance Company, against Benny Alexander, Sr., in the amount of $1,124.50, with legal interest from the date of judicial demand and for all costs.
Reversed and rendered.