## CENTANNI v. FERRITO

(November 28, 1927. Opinion and Decree.)
(February 16, 1928. Writ of Review by Supreme Court Refused.)

---

*(Syllabus by the Court)*

1. **Louisiana Digest—Automobiles—Par. 4.**
The duty and responsibilty of the driver of an automobile towards his guest in the automobile is merely to be careful and avoid committing an act of negligence or imprudence that might add to or increase the ordinary dangers of the occupation.

Appeal from Twenty-fourth Judicial District Court for the Parish of Jefferson. Hon. L. Robert Rivarde, Judge.

Action by Paul Centanni, tutor, et al, against Vincent Ferrito.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Geo. J. Untereiner, of New Orleans, attorney for plaintiff, appellant.

P. M. Milner, of New Orleans, attorney for defendant, appellee.

CLAIBORNE, J.   This is an automobile damage suit.

The plaintiffs are the children of Cosino Dominick Centanni. They allege that on November 16, 1924, their father, at the invitation of the defendant, Vincent Ferrito, boarded a motor car owned and driven by him, Vincent Ferrito, at his home in Harvey and rode with him from the home of defendant towards the home of defendant's father at lower Harvey; that defendant drove his car at a great rate of speed and suddenly turned from the side of the road to the center, thus making a short turn and in so doing struck an obstruction which upset the car upon its side and threw petitioners' father, Cosino Domino Centanni, out of the car, causing him serious injury from which he died the same day; that by his death petitioners have suffered damages in the following amounts:

1st. The cost of his burial................$ 190
2nd. His mental and physical suffering ............................................$3000
3rd. Loss of his love and association $3500
4th. Their support and maintenance....$3310

"That petitioners' father's death was caused solely and exclusively by the negligence, fault, want of care and skill of Vincent Territo in driving his car down the road at a high rate of speed, faster than permitted by law and turning his car from the side of the road to the center of the road made the turn too short, driving his car against an obstruction in the road; that in so doing he threw his car on its side and threw petitioners' father from the car, injuring him as above stated;" for all of which the plaintiffs claim $10.000.

The defendant admitted that Cosino Centanni was riding in his automobile but that it was at Cosino's request; and therefore denies that he was his guest; he denied that he was driving at great speed; he averred that he turned the front wheels to the right of his car to avoid a rock in the path of the wheel, which brought the car near the ditch on the side of the road, that he immediately turned the wheels to the left to avoid the ditch, when he saw another car driving towards him from the opposite direction, which caused him again to turn his wheels to the right, when without any warning, the steering gear of his car broke and caused the front wheels to turn abruptly and overturn the car; that defendant was driving at the rate of 15 miles an hour, in a careful manner, and that the accident was attributable entirely to the breaking of the steering gear; defendant avers that he also was badly injured and so was his son; defendant admitted that the plaintiff's father died from the injuries received and that they buried him; but denied all the other allegations of the petition.

There was judgment in favor of defendant rejecting plaintiffs' demand.

They have appealed.

The plaintiffs put the defendant upon the stand as a witness. He said that the deceased got into his car without any invitation from him but with his permission. In the car with them were his boy and his brother-in-law; he corroborated the manner of the accident as stated in his answer and further said; "when I saw I was going down in the gutter, there was an-

other car coming to meet me, and instead of me putting my foot on the brake, I must have put it on the oil; I put it on the oil and felt the car going over, and the steering wheel must have broke, and I was knocked unconscious * * * when I pulled over again my wheel struck a rock and it throwed my wheel out of my hand into the gutter * * * up to the time he turned over his steering wheel was in good order.

Paul Centanni, the plaintiff testified that after the accident he examined defendant's automobile and that he saw that "the top of the steering wheel where he holds, was broken off;" the car turned over on the left side "because Mr. Ferrito was pinned underneath the car;" the steering wheel was off.

E. W. Gardere testified :

"I was going up the Gretna, Jefferson Highway * * * and as I was going up, the roads were rather dusty, and about six blocks ahead of me, I could see it very distinctly because I was going in the direction the automobiles were coming, and about six blocks ahead of me there was a Ford sedan, and immediately back of that sedan, was another automobile which later I discovered to be Mr. Ferrito's car coming at a fast rate of speed; I could notice it was coming fast because of the amount of dust that it was stirring up as it was coming along. Mr. Ferrito evidently blew for the Ford car to get out of his way, because I noticed the Ford car move aside, and as the Ford car moved to the right, Mr. Ferrito then tried to pass it. In passing, evidently they had some loose gravel, and he was about to go into the ditch on the left side, as he was passing the Ford sedan; then he righted his car, and made back for the right of the road. His car then turned to go to the opposite side of the road, and he was facing the predicament of going in the ditch on the other side, or through the fence. He turned short to straighten his car, and in doing that, whether the front wheels locked, or got tangled up in the gravel or not, I don't

know, but the car made a complete somersault, and in landing it reversed the position in which it came. I was going towards them, and I went to the accident, and saw Mr. Ferrito who was then unconscious. The wheel evidently got jammed or got caught in the gravel, otherwise he would have kept going."

If something had not occurred in front to prevent the front wheels from rolling along, the car would have kept going.

Sam Deto was in the car with the man that is dead.

"Q. Tell the Court how it happened.
"A. Well, there was loose gravel and a rock. They had a machine in the road, and it was going close to the ditch, and he swung and swung again, and it turned over. There was a machine coming on the road, and a machine on the side, and he hit a rock and loose gravel."

Jake Ferrito, defendant's son, testified as to the manner of the accident as follows:

"Well, they had loose gravel, and they had some cars coming front ways and the loose gravel caught him and he swerved to get out of the way, and he hit a rock, and his wheel got locked and the steering wheel broke and it turned over, the steering wheel where he holds his hand; he was going between 15 and 20 miles."

Defendant in his own behalf repeats his examination in chief and says he was going between 15 and 20 miles an hour; he had no reason to believe that the steering wheel was defective, the wheel broke in his hand, and that was the cause of the accident.

It is evident that the plaintiffs can recover against the defendant only by proving him guilty of negligence in the driving of his car. The plaintiffs have understood their obligation in this respect by specifically charging the defendant with negligence. Assuming that the deceased was the guest of the defendant, what degree of care was due by defendant to deceased?

This question is answered by our Supreme Court in Jacobs vs. Jacobs, 141 La. 272, 74 So. 992, in which the Court said on page 286:

"The driver's duty and responsibility is merely to be careful and avoid committing any act of negligence or imprudence that might add to or increase the ordinary danger of the occupation."

Huddy in S. 678, p. 880, condenses the law in these words:

"The express or implied duty of the owner and driver to the occupant of the car is to exercise reasonable care in its operation and not unreasonably to expose him to danger by increasing the hazard of that method of travel. He must exercise the care and diligence which a man of reasonable prudence, engaged in like business would exercise for his own protection and the protection of his family and property."

On page 881:

"In some jurisdictions recognizing degrees of negligence such as 'gross,' 'ordinary' or 'slight' negligence, it may be held that the driver of an automobile taking a gratuitous passenger is liable only in case of 'gross negligence.' The latter doctrine was repudiated by our Supreme Court in the Jacobs case on p. 286.

In the case of Siefker vs. Paysee, 115 La. 953, 40 So. 366, the Court said:

"Where persons are gunning together and an accident occurs, the negligence, to render one liable, must be in its nature gross. Fault must be shown."

We do not see in this case that the defendant was negligent. He turned to his left, upon a narrow country road, to avoid another car in front of him; when he had done that, he turned to his right in order to resume his proper position in the road; but in doing so he drove too near the ditch; in trying to return to a safe position in the road an incoming car blocked his way; in an effort to avoid it, he got tangled in loose gravel and struck a rock; and in trying to straighten his wheels his steering gear, which was apparently in good condition, broke in his hands.

Nor do we find that he was traveling at an excessive rate of speed. The uncontradicted testimony is that his speed was between 15 and 20 miles. The deceased made no complaint of the speed. Huddy, S. 694; Jacobs, p. 279.

We see no fault in defendant.

His family were in the car with him.

The judgment is therefore affirmed.