MONROE v. D'AUNOY. *

No. 14214.

Court of Appeal of Louisiana. Orleans.

Oct. 17, 1932.

Gordon Boswell, of New Orleans, for appellant.

A. M. Suthon and John A. Smith, Jr., both of New Orleans, for appellee.

JANVIER, J.

Plaintiff, a young woman, was injured when the automobile in which she was riding as a guest of defendant skidded and turned over on its side.

Charging that the skidding of the car was caused by negligent or inattentive driving on the part of defendant, and also that the effect of the skidding could have been avoided had defendant been on the alert when it commenced, plaintiff seeks to recover the sum of $19,860.

It is charged that defendant was negligent in many respects, among which plaintiff lays particular stress on the following:

That the speed of the car was excessive in view of the condition of the surface of the roadway; that defendant was using only one hand in the operation of the automobile, the other at the time being engaged in turning on the inside light which illuminates the speedometer and other gauges and meters; that, although it was dark at the time, defendant had not turned on his headlights and, therefore, was unable to see that there was loose gravel in the roadway ahead of his car; and that defendant inexpertly and carelessly applied his brakes and disengaged the clutch after the skidding commenced, whereas, so plaintiff contends, an experienced and expert driver would have increased his speed and thus prevented the turning over of the car.

Defendant denies that the speed of the car was excessive. He maintains that, although a car may be fully controlled with only one hand on the wheel, as a matter of fact both his hands were engaged in the operation of the car and were holding the wheel at the time of the accident. He also asserts that there was no need for his headlights, as it was not yet dark.

In fine defendant contends that he was in no way at fault; that he had done all that was reasonably possible to maintain his automobile in a safe condition and that he was operating it with all the care of a reasonably prudent driver; and that, thus, the skidding and the resulting turning over were not within his control and did not create liability in him.

In the district court there was judgment for plaintiff; our brother below being of the opinion that the defendant was negligent in "not having his lights lit" and, in that "he failed to exercise ordinary skill in the operation of his car after he felt that it had become unmanageable."

The car was in perfect condition and the brakes and running gear had been inspected and adjusted by a mechanic just before the accident. It was equipped with new tires.

It is conceded that the speed at which it was proceeding just prior to the skidding was under 35 miles per hour and that even this speed had been somewhat reduced. It was in the open country, the road was straight, and nothing is shown to justify a belief that 35 miles an hour was excessive.

Unless, then, there was something apparent on or in the surface of the roadway to indicate that there was danger, it was not negligence to operate the car at such speed in the open country, far from congested traffic and on a straight road. In Delaune v. Breaux, 174 La. 43, 139 So. 753, 754, the Supreme Court of Louisiana said:

"It was not negligence on the part of Breaux to drive his car on a graveled highway, in the nighttime, at a speed of from thirty to thirty-five miles an hour, the highway being straight at that point for some distance."

It is shown, and there is no attempt at contradiction, that there was nothing in the appearance of the surface of the road to cause alarm in the most careful driver. In fact,

one of the witnesses stated that after the accident he carefully examined the road in an effort to ascertain the cause of defendant's suddenly losing control of the car and was unable to see anything to which such action of the car could be attributed, except a very small ridge about an inch, or possibly two inches high, of loose gravel in the middle of the road.

A young lady experienced in automobile driving, and who was seated in front alongside defendant, says that the condition of the road where the accident happened was no different from what it was anywhere else.

■ We find, then, that the speed of the car was not excessive and that there was nothing in the roadway to indicate that there was danger of skidding.

■■ It is said, however, that the headlights were not turned on and that because of this defendant was negligent. There is no doubt that the failure to light lights where they are necessary is negligence, but we are convinced from the record that they were not necessary and would not have increased the visibility of the road surface.

It is instinctive to turn on headlights as soon as darkness has sufficiently gathered to render them an aid to driving. The operation of turning on lights is so simple that it is probable that defendant would have turned them on had they been really necessary and of assistance, because it is shown that they were in perfect working order.

The accident occurred just before 7 p. m. on August 20th, and it is admitted that, according to the United States Weather Bureau reports on that day, "the sun sets at 6:36 p. m. and the twilight sets in approximately six-tenths of an hour, or 36 minutes, later."

If, then, twilight had not yet set in, we do not believe that, although the weather was bad, the lights, had they been turned on, would have been of material assistance.

The verbal evidence is in conflict as to whether the lights were on, defendant himself stating that they were not; but we believe that, whether they were on or not, there was no necessity therefor. In fact, had it been dark it is almost certain that all of the witnesses would have agreed as to whether they were on and would have been aware of the glare of the lights and of the necessity for them.

■ Furthermore, even if it be conceded that the headlamps were not turned on, we cannot see that there could have been any connection between this fact and the accident because the condition of the surface of the roadway would not have been apparent even under the lights, because, as we have seen, a careful scrutiny of the roadway afterwards failed to disclose any danger from an abnormal, "skiddy," or slippery condition. Defendant was justified in assuming that the surface of the roadway was safe for ordinary travel, and, certainly, 30 to 35 miles per hour could be considered ordinary travel and reasonable speed on a main artery leading out of the city of New Orleans.

"The rule is well established in the jurisprudence of this state that a person using a public highway, * * * has a right to presume and to act upon the presumption, that the way is safe for ordinary travel, even at night. * * *" Jacobs v. Jacobs, 141 La. 272, 74 So. 992, 997, L. R. A. 1917F, 253.

It is true that it is not to be denied that automobiles properly operated are not in the habit of skidding, at least to the point of overturning, and it may be that, when such a happening occurs, there is, to say the least, room for grave suspicion that there has been negligence. In fact, it has been said that such an occurrence raises a presumption of negligence and that such presumption throws upon the driver the burden of exculpating himself by showing that he was free from fault. In Hamburger v. Katz et al., 10 La. App. 215, 120 So. 391, 393, we said:

"An automobile, properly driven at moderate speed over the public road under the conditions obtaining in this case, would have held the road in the ordinary course of things, and the fact that the automobile driven by Katz catapulted over the embankment, and rolled over two or three times before coming to rest at the foot of the embankment, is a circumstance which, in the absence of explanation, gives rise to the presumption of negligence. A prima facie case is made out, which can only be overcome by proof exculpating Katz."

In that case we quoted with approval from Berry on Automobiles (4th Ed.) § 216, as follows:

"The doctrine of 'res ipsa loquitur' may be applied in actions seeking to recover for injuries due to the operation of automobiles. The facts surrounding and forming part of an automobile accident may be such as to raise the inference that the accident was due to negligence on the part of the person operating or in control of the automobile."

A leading case on the question of whether the doctrine of res ipsa loquitur is applicable in such situations is found in Mackenzie v. Oakley, 94 N. J. Law, 66, 108 A. 771, which case is cited in most of the discussions on the subject and in the Hamburger Case we find the following:

" 'A guest who is invited to occupy a seat in a motorcar, is an invitee to whom the owner owes a duty of care. Where an automobile in which plaintiff was a guest skidded on the

highway, which defendant owner claimed was made slick because of a sudden shower,' it was a question 'whether defendant's explanation was sufficient under the doctrine of "res ipsa loquitur." ' The doctrine of 'res ipsa loquitur' applies when an accident happens suddenly and without apparent cause, and yet, from the very fact of its occurrence, an abnormal situation is presented which bespeaks negligence in operation, under the rule of 'res ipsa loquitur,' the defendant is called upon for an explanation to exculpate himself from the legal inference or presumption of negligence arising therefrom."

Plaintiff's counsel, apparently feeling that they have not been able to affirmatively show negligence with that degree of certainty which is ordinarily required of a plaintiff, strenuously contend that the doctrine of res ipsa loquitur 'is applicable and that since, under that doctrine, the burden of exculpating himself rests upon defendant, plaintiff need do no more than show that she was a guest in the car and that the car turned over under unusual circumstances.

Defendant protests that the burden of proof in such case remains on plaintiff and cites considerable authority to this effect.

In Levy v. Leopold et al., 142 So. 191, we held that the burden of proving negligence rests on the injured guest, just as it ordinarily does on every other plaintiff, and we cited Lorance v. Smith, 173 La. 883, 138 So. 871, 875, in which our Supreme Court said:

"The action which a guest or passeenger in the vehicle of another has against the host to recover damages for injuries sustained while riding as such is one in tort, and, like all other tort actions, is grounded on fault and negligence, and in actions of this kind the burden is upon the plaintiff to establish the negligence relied upon."

We believe that the proper rule is well stated in Lawson et ux. v. Nossek, 15 La. App. 207, 130 So. 669, 671, in which Judge Odom, now justice of the Supreme Court and who, as such, was author of the opinion in Lorance v. Smith, supra, said:

"The doctrine of res ipsa loquitur, which means 'the thing speaks for itself,' finds frequent application in automobile accident suits. Under this doctrine or rule, when a thing or instrument which causes the accident and injury is shown to be under the control and management of a person who owes a duty to another and where it is shown that the accident is such as does not happen in the ordinary course of events, if those who control such instruments use due care, the presumption arises that the accident was caused by want of due care. But that presumption is not conclusive. In such cases negligence may be inferred from the fact itself, and the rule res ipsa loquitur applies.

So that, in automobile accident suits based upon negligence, the plaintiff makes out a prima facie case when he shows that the machine which caused the injury was under defendant's control, that the accident and injury did take place, and that the event would not have happened in the ordinary course of events, if due care had been taken by the driver. The burden is then shifted to defendant to make explanation to show that ordinary care was exercised."

But, wherever the burden may in such cases be ordinarily placed by operation of law, we feel that in this case all available evidence is in the record and that a reading of that record shows that defendant, in the operation of his car, complied with the legal obligation which rested upon him to operate it with ordinary care. He was not the insurer of plaintiff's safety, nor was he bound to exercise extraordinary care, nor to operate the car as an expert would have done.

"The rule which prevails in this state and elsewhere is that one who invites another to ride in his automobile as his guest, or permits another to ride as a gratuitous passenger, owes to his guest or the passenger the same duty that he owes to a stranger, which is to use ordinary care not to injure him in the operation of the car. Such guest or passenger has a right to expect the same security as that enjoyed by the host himself." Lorance v. Smith, supra.

Huddy, in his Cyclopedia of Automobile Law (9th Ed.) vol. 5-6, on page 222, places Louisiana among those jurisdictions which require of the gratuitous driver to his guest only ordinary care, and he cites, in support of this conclusion, Sears v. Interurban Transp. Co., 14 La. App. 343, 125 So. 748, Centanni v. Ferrito, 7 La. App. 759, and Hudson v. Jackson Brewing Co., 4 La. App. 549. In Centanni v. Ferrito, above cited, is found a situation somewhat resembling that which is presented here, in which guest passengers attempted to recover from the driver, who had invited them to ride. The accident resulted from the striking of loose gravel and the breaking of the steering wheel. Judge Claiborne, speaking for this court, said:

"It is evident that the plaintiffs can recover against the defendant only by proving him guilty of negligence in the driving of his car. The plaintiffs have understood their obligation in this respect by specifically charging the defendant with negligence. Assuming that the deceased was the guest of the defendant, what degree of care was due by defendant to deceased?

"This question is answered by our Supreme Court in Jacobs v. Jacobs, 141 La. 272, 74 So. 992 [L. R. A. 1917F, 253], in which the Court said on page 286 [of 141 La., 74 So. 992, 997]:

" 'The driver's duty and responsibility is

merely to be careful and avoid committing any act of negligence or imprudence that might add to or increase the ordinary danger of the occupation.'

"Huddy in S. 678, p. 880, condenses the law in these words:

" 'The express or implied duty of the owner and driver to the occupant of the car is to exercise reasonable care in its operation and not unreasonably to expose him to danger by increasing the hazard of that method of travel. He must exercise the care and diligence which a man of reasonable prudence, engaged in like business would exercise for his own protection and the protection of his family and property.' "

Huddy also places Louisiana among those states in which it is held that the gratuitous driver, not being an insurer of the safety of his guest, is not liable for accident resulting from latent defects in the roadway, and, as supporting this statement, he cites Banta v. Moresi, 9 La. App. 636, 119 So. 900. Huddy's Cyc. of Automobile Law (9th Ed.) vols. 5-6, page 222, footnote 17.

That skidding may occur without fault has been many times held. In Barret et al. v. Caddo Transfer & Warehouse Co., Inc., 165 La. 1075, 116 So. 563, 564, 58 A. L. R. 261, our Supreme Court said:

"It is settled that the mere fact that an automobile skidded is not evidence of negligence. Berry on Automobiles, § 156; Huddy on Automobiles, § 336; Cyc. on Automobile Law, p. 269.

"As is well said in Linden v. Miller, 172 Wis. 20, 177 N. W. 909, 12 A. L. R. 665:

" 'Skidding may occur without fault, and when it does occur it may likewise continue without fault for a considerable space and time. It means partial or complete loss of control of the car under circumstances not necessarily implying negligence. Hence plaintiff's claim that the doctrine of res ipsa loquitur applies to the present situation is not well founded. In order to make the doctrine of res ipsa loquitur apply, it must be held that skidding itself implies negligence. This it does not do. It is a well-known physical fact that cars may skid on greasy or slippery roads without fault either on account of the manner of handling the car or on account of its being there.' "

The latest discussion of the subject is to be found in Siren et al. v. Montague, 142 So. 196, 198, in which we said:

"Since our Supreme Court recognizes the doctrine that the mere fact that an automobile skids is not evidence of negligence, and that the doctrine of res ipsa loquitur does not apply, in such a situation, it is necessary for the plaintiff to allege and prove the charge of negligence against the operator of the motor vehicle, and therefore the question of liability in each case depends upon the facts and circumstances surrounding the case."

We come to the final charge of negligence that, even if defendant's fault did not bring about the skidding, nevertheless he could, by very expert handling, have avoided the final turning over by increasing his speed, whereas he applied his brakes and disengaged his clutch.

The record does not sustain this charge of negligence. Whether or not the overturning would have occurred had the driver attempted to increase, rather than diminish his speed, is purely conjectural. At any rate, he had had years of experience as a driver in this and in other countries and in the emergency he did what seemed to him the proper thing to do. If he adopted the wrong course, there is nothing in the record to show that his error was such a one that might not have been committed by any other reasonably prudent and experienced driver. That an expert may have attempted to avoid turning over by speeding up is not determinative of whether defendant's action, in trying to stop, constituted actionable negligence. A gratuitous host, as we have shown, is required to exhibit only reasonable and ordinary skill and equanimity.

Then, too, there is a grave conflict as to what really would have been the wisest action to take. It certainly cannot be said that in all cases of skidding the expert thing to do is to increase speed.

In Lawson v. Nossek, 15 La. App. 207, 130 So. 669, and in Reggie v. Karre, 19 La. App. 477, 139 So. 532, we find that defendants were condemned because, after the skidding commenced, they did not attempt to stop, but continued at unabated speed.

In Banta v. Moresi, 9 La. App. 636, 119 So. 900, supra, the court apparently approved the action of a driver who, when skidding commenced, applied his brakes.

It is a very reasonable doctrine which requires of a gratuitous host only ordinary care —only such skill and experience as is found in a reasonably prudent and reasonably careful driver—and which does not condemn a host who invites others to ride with him because it may be found that he has not exercised the care which would have been shown by one most expert in the handling of automobiles. In the instant case defendant had furnished a car which had been completely inspected and adjusted; he had equipped it with new tires; he was driving it at a very reasonable speed; he was exercising all usual and ordinary care; and he should not be held liable under such circumstances when by reason of conditions of which he could not have been aware an accident occurred.

Plaintiff claims at one point that his speed was excessive and at another point that it should have been increased. Possibly the accident would not have occurred had his speed been diminished prior to striking the gravel. Possibly it would not have occurred had the speed been increased after striking it. But, whether it would have been avoided by increasing the speed in the one instance, or by diminishing it in the other, we are unable to say.

The judgment appealed from is annulled, avoided, and reversed, and there is now judgment dismissing plaintiff's suit at her cost.

Reversed.