## DEIMEL v. ETHERIDGE et al.
### No. 17044.

Court of Appeal of Louisiana. Orleans.

Nov. 18, 1940.

Rehearing Denied Dec. 16, 1940.

J. G. Dempsey, Jr., of New Orleans, for appellant.

Warren Doyle and L. D. Dunbar, both of New ·Orleans, for appellee, Mrs. Erma Etheridge.

Alvin R. Christovich and Frank T. Doyle, both of New Orleans, for appellees New Orleans Public Service, Inc., and Hartford Accident & Indemnity Co.

JANVIER, Judge.

Plaintiff, manager of a downtown parking garage in New Orleans, suffered personal injuries when struck by an automobile of a patron who was driving into the garage to store her car. He seeks recovery for his sufferings, his personal injuries, his loss of earnings and his medical expenses. The patron who was operating the car was Mrs. Erma Etheridge, an employee of New Orleans Public Service, Inc.

It is alleged that at the time of the occurrence Mrs. Etheridge was acting within the scope of her employment and that, therefore, the said corporation, her employer, is liable, and it is also alleged that the said New Orleans Public Service, Inc., had secured from Hartford Accident & Indemnity Company a policy of liability insurance protecting it in all cases in which its employees might, in the use of their automobiles on company business, cause injury, and that, therefore, by reason of the effect

of Act 55 of 1930, the said insurance company is also liable to plaintiff.

Plaintiff prays for solidary judgment against all of the said defendants, to-wit: Mrs. Etheridge, New Orleans Public Service, Inc., and Hartford Accident & Indemnity Company, in the sum of $53,250.

All of the defendants deny that Mrs. Etheridge was in any way at fault and, in the alternative, aver that, if there was any fault on her part, the true cause of the accident was the contributory negligence of Deimel himself in stepping out from a place of safety directly into the path of, or directly into the side of, Mrs. Etheridge's automobile. New Orleans Public Service, Inc., and Hartford Accident & Indemnity Company both deny that, at the time of the occurrence, Mrs. Etheridge was acting within the scope of her employment, and maintain that, even if there was any fault on the part of Mrs. Etheridge and even if this fault can be pointed to as the legal cause of plaintiff's injuries, neither of the corporate defendants is liable therefor.

Mrs. Etheridge, in what she terms a "call in warranty", asserts that, at the time of the occurrence, she was acting within the scope of her employment and avers that, if there is any liability in her, the Hartford Accident & Indemnity Company, as warrantor, must indemnify her should any judgment be rendered against her.

From a judgment in favor of all defendants and dismissing plaintiff's suit, he has appealed.

The accident occurred on the morning of March 19, 1937, at about 8:20 o'clock. Deimel, as we have said, was manager of the Dryades Garage, which is located on the lake side of Dryades Street, one block above Gravier Street. He was inside the building as Mrs. Etheridge entered, she having driven her car up Dryades Street from Gravier Street and having turned to her right into the door of the garage. Dryades Street proper and its sidewalks are unusually narrow, so that, in order to enter the doorway, it was necessary for Mrs. Etheridge to turn sharply to the right. She could not make a long turn.

There are three large doors, or openings, into the garage. The first, which is referred to in the evidence as the main entrance, is nearer Gravier Street than the one through which Mrs. Etheridge entered, and she states that she could not use the

first door because of other parked cars which obstructed it, so that she went to the second entrance, as she had often done and as she says Deimel had often told her to do whenever she should find the main entrance blocked. Deimel denies that the main entrance was blocked, maintaining that she could have entered by it. But this is not his principal charge of negligence, his more strenuously urged contention being that Mrs. Etheridge entered at a speed of from thirty to thirty-five miles per hour and dashed headlong into him where he was standing, in plain view, some fourteen or sixteen feet inside the garage.

Mrs. Etheridge's explanation of the occurrence is that, as she entered at a very slow speed, Deimel was shielded from her view by a wall of the building and that, just as the front wheels of her car passed the line of this wall, he walked out from behind the wall into the fender of her car, his attention being directed to a paper which he carried in his hand and on which he was writing.

The entire case depends, then, upon a question of fact: Did Mrs. Etheridge, after entering the garage at high speed, run into plaintiff well inside the doorway, or did plaintiff walk out from the obscurity provided by the wall and step in front of the car, or into the fender, when there was no longer an opportunity for Mrs. Etheridge to avoid him?

It would have been impossible for the car to have been driven into the garage at high speed. The street was very narrow and, parked alongside the curb, to the right of Mrs. Etheridge's car, were other automobiles. The sidewalk is only five or six feet wide and, if Mrs. Etheridge's car was proceeding—as it must have been—along the center line of the street, it was necessary that it make a 90-degree right-hand turn into a twelve-foot doorway only twelve or fourteen feet to her right. This maneuver could not have been accomplished at high speed, particularly since there was, as is testified to and as is shown by the photographs, a rather sharp rise in the sidewalk from the curb to the sill of the door through which the automobile passed. Then, too, it is almost inconceivable that any mature woman would have done a thing so extremely reckless even had she been physically able to accomplish it. She was not in a hurry and had ample time to keep the engagement which she had only a half-block away.

Accompanying Mrs. Etheridge was a Miss Oliphant, who corroborates her testimony in all respects, particularly as to the facts that the car was moving slowly and that Deimel stepped out from behind the wall.

Against the testimony of these two ladies, which gives every appearance of sincerity and truthfulness, we have the rather unbelievable statement of Deimel himself that the automobile dashed around a short, right-hand curve at thirty or thirty-five miles per hour, ascended the rather sharp incline of the sidewalk, entered the doorway, and then proceeded an additional fourteen feet or so and crashed into him. Although Deimel's statement is corroborated by the testimony of Ernest Holmes, an employee of the garage, the record leaves no doubt at all that, at the time of the occurrence and, in fact, for several minutes thereafter, Holmes was in another part of the garage, parking other cars, and did not see Mrs. Etheridge's car as it entered. Holmes' testimony is too accurate in detail to admit of its being believed. He fixes the speed at which the car entered at thirty or thirty-five miles per hour, just as Deimel had fixed it, and he puts Deimel at the exact spot at which Deimel claims to have been.

The same irreconcilable contradictions appear in the evidence concerning the spot at which Deimel was struck. Mrs. Etheridge and Miss Oliphant are certain that he was only a foot or so inside the building as the front of the car entered and as he walked out from a position of obscurity, whereas both Deimel and Holmes say that he was well inside the garage and was standing in full view of Mrs. Etheridge, who could have seen him had she looked and who could have stopped her car had she had it under control. But here, again, we have the testimony of the two ladies against that of Deimel and Holmes and we have the same unbelievable statement of Holmes that he saw the accident—unbelievable because, as we have said, he obviously was not anywhere near the scene at the time. In fact, it appears that several minutes afterwards, after Deimel had been seated in a nearby chair, Holmes, for the first time, made his appearance and asked what had happened. Holmes, on at least one other point, is shown to have been inaccurate in his statements. He says that "it was a nice sunshiny day, a very clear day", yet all of the other witnesses agreed that it was misty, or raining slightly, at the time, and that it had been raining before the car reached the garage. That the day was rainy and cloudy is borne out by the official weather report which is in evidence.

It is argued that the car must have struck Deimel at a high speed since his injuries were rather severe. The most serious of those injuries was that sustained by his right knee and even that does not necessarily indicate that a severe blow was struck. The chest injury might well have been sustained by a fall after his knee gave way.

We cannot but conclude that the accident occurred as defendants claim and it is quite manifest that there is no obvious error in the finding of the trial court.

■ Counsel for plaintiff insists that the doctrine of res ipsa loquitur is applicable to this case. His argument seems to be that, whenever an automobile strikes any person not on a public street, it is evident that such an automobile is not in its proper place and that, therefore, the burden is on the operator of such automobile to show how such an accident occurred, and counsel maintains that we so held in Monroe v. D'Aunoy, 143 So. 716, 719.

A reading of that opinion will show that counsel is in error. As a matter of fact, we said in that case that it did not matter whether the doctrine was applicable or not, since all of the evidence was in and showed conclusively that there was no liability. All we did say in that case was that, if an automobile turns over, or is found after an accident to be in some place where it could not have been had it been carefully operated, the burden is on the operator to explain the unusual occurrence. This doctrine has no application to such a situation as that presented here, but even if it did we would say, as we did say in Monroe v. D'Aunoy (supra): "Wherever the burden may in such cases be ordinarily placed by operation of law, we feel that in this case all available evidence is in the record and that a reading of that record shows that defendant" was in no way at fault.

Counsel for appellant maintains, also, that even if we feel that from the record, as it is now made up, it is not possible that the judgment be reversed, we should nevertheless remand the case that plaintiff may be afforded an opportunity to introduce before the district court on a new trial

certain evidence which was not introduced at the time of the trial and which has since been discovered.

An application for new trial was made in the court below based on the alleged discovery of certain new witnesses. We have investigated the contention concerning what these witnesses would have testified to, and we find that it is merely cumulative and does not tend to develop any new issue, or to show any new fact. Under the circumstances the judge of the district court properly exercised his discretion in refusing to grant the new trial. It is well settled that he has such discretion.

In Goldsmith v. Unity Industrial Life Insurance Company, 13 La.App. 448, 128 So. 182, 183, this court said: "The right of the district court to grant or refuse a new trial will not be interfered with, except in a case of plain abuse of discretion, particularly where it is evident that the new evidence sought to be introduced is merely cumulative. Handy v. New Orleans P. S., Inc., 13 La.App. [257], 127 So. 753; Teutonia Bank & Trust Co. v. Heaslip, 138 La. 860, 70 So. 861; Muller v. Hoth, 105 La. 246, 29 So. 709; Sorrel v. [St.] Julien, 4 Mart. (O.S.) 508; Roberts v. Rodes, 3 Mart. (N.S.) 100; Toulman v. Elliott, 15 La. 226; Miles v. Craig, 6 La.Ann. 753; Andre v. Bienvenu, 1 Mart. (O.S.) 148; Linton v. Stanton, 4 La.Ann. 401."

In Handy v. New Orleans Public Service, Inc., 13 La.App. 257, 127 So. 753, we quoted the following language used by the Supreme Court in Teutonia Bank & Trust Company v. Heaslip, 138 La. 860, 70 So. 861: " 'The ruling on the motion for a new trial, based on newly discovered evidence, will not be disturbed. The evidence was merely cumulative; and it was discretionary with the trial judge to grant or refuse the motion. No error or arbitrariness in the rulings of the judge is disclosed in the record.' "

The Court of Appeal for the Second Circuit, in the recent case of Watts v. Fisher Lumber Corporation, 189 So. 301, 303, said: " * * * Where the new evidence sought to be introduced is merely cumulative, the ruling of the district judge on a motion to reopen or for a new trial will not be disturbed, unless there has been clear abuse of the discretion which the law grants him in matters of that kind. Goldsmith v. Unity Industrial Life In-surance & Sick Benefit Ass'n, 13 La.App. 448, 128 So. 182; Hill v. Taylor, La.App., 174 So. 196. It does not appear that such discretion has been abused."

Since there appears to be no liability in Mrs. Etheridge herself, none of the defendants is liable, and it becomes unnecessary for us to discuss the contentions resulting from the so-called "call in warranty" and from the fact that an insurance policy had been issued.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.