48 So.2d 107 (1950)
HEBERT
v.
GENERAL ACCIDENT FIRE & LIFE ASSUR. CORPORATION, Limited.
No. 19425.
Court of Appeal of Louisiana, Orleans.
October 16, 1950.
*108 R. A. Dowling, New Orleans, for plaintiff and appellant.
Dufour, St. Paul & Levy, Leonard B. Levy, Melvin I. Schwartzman, New Orleans, for defendant and appellee.
JANVIER, Judge.
Plaintiff, having sustained physical injuries in an automobile, which was being operated by her husband, brought this suit for damages against the liability insurance carrier of her husband, alleging that the accident in which she was injured resulted from negligence on his part. From a judgment dismissing her suit she has appealed.
In a Buick automobile owned and driven by plaintiff's husband, she and her husband, on the morning of August 30, 1947, left New Orleans to go to Norwood, Louisiana, to visit her sister. The sister's home was located on a gravel road, and for the last few miles of the trip it was necessary that they travel over this gravel road. On this road plaintiff's husband lost control of the car, which swerved to the side of the road into and across a ditch and then into an embankment. The car was damaged and plaintiff sustained physical injuries.
In her petition plaintiff alleged that the accident was caused by the negligence of her husband who "took his hands off the wheel while driving same and lost control of the automobile for this reason."
Immediately following this allegation plaintiff's petition contained the following further allegation: "That this allegation is made merely on belief and that your petitioner does not know the exact cause of the said accident, and in the alternative only alleges and pleads `res ipsur (ipsa) loquitur.'"
Defendant, General Accident Fire and Life Assurance Company, Ltd., concedes that an accident occurred and that plaintiff sustained physical injuries, the extent of which is denied, but in its answer contends that the accident did not result from negligence on the part of defendant's husband. In the alternative, it avers that if plaintiff's husband was guilty of any negligence, then the proximate cause of the accident was the contributory negligence of plaintiff herself in that although the road over which they were traveling contained many deep ruts with which she was thoroughly familiar "having traveled same on many occasions", she "made no protest to driving over said road and assumed the risks of driving over such a road."
Neither the liability policy on which this suit is based nor Act No. 55 of 1930 makes the insurance company liable merely because of the occurrence of the accident. There is liability in the insurer only if the insuredplaintiff's husbandwas guilty of negligence which caused the accident.
Plaintiff alleges, as we have shown, that the accident was caused by carelessness on the part of her husband in removing his hands from the wheel, but there is not the slightest evidence that he did so. She herself when asked whether her husband took "his hands off the wheel," attempted to evade a direct answer and said: "I saw him trying to control the car with his hands and something went wrong with the steering wheel or something and he couldn't do a thing with it and it just jumped all over the road."
She was asked by the Court: "Well, were his hands on the wheel at all times, madam? That is what he is asking you." She answered: "I couldn't answer because I was so excited at the car having the accident. Something was happening to the car; that's all I know." Finally, however, she was asked the direct question whether, at any time, she had seen her husband take his hands off the steering wheel of the automobile and she answered: "No sir."
Hebert himself made no statement to the effect that he had taken his hands from the wheel.
*109 These were the only two witnesses who knew anything about the operation of the car and therefore we find in the record not one syllable which sustains the charge that the accident was caused by the carelessness of plaintiff's husband in removing his hands from the steering wheel.
If, then, there is to be a recovery by plaintiff, since her petition contained no other charge of negligence, the recovery can be based only on the applicability of the doctrine of res ipsa loquitur to the facts presented in this record. In other words, there can be no recovery unless we are convinced that there was a duty in defendant to prove that plaintiff's husband was free from negligence and that defendant has failed to produce this proof.
Counsel for plaintiff attempts to persuade us that in all cases in which an automobile leaves the roadway and causes damage, whether it be to a passenger in another car, or to a passenger in the car itself, to property alongside the road or to a pedestrian on the sidewalk, the doctrine of res ipsa loquitur applies and requires that the operator of the car sustain the burden of explaining the occurrence in such a way as to exculpate himself.
We are unable to agree that the doctrine under which the burden of proofthe duty of going forward with the evidenceis shifted from the plaintiff to the defendant, is applicable in every such case.
It cannot be disputed that when an automobile leaves the roadway and crashes into an innocent pedestrian who is under no duty to observe the automobile and who has not seen the cause of the occurrence, the duty is on the operator to explain the unusual affairto show that it did not result from his fault.
Nor can it be denied that if a person, who is a passenger in a car, is hurt because the car leaves its proper place on the road and crashes into a ditch or an embankment alongside the road and the passenger can show that he was asleep, or was reading, or for some other proper reason was not aware of what was going on and knew nothing and could know nothing about the cause, then there is placed on the driver the duty of producing evidence which will show that he was not at fault.
In Weidlich v. New York, N. H. & H. Railroad Co., 93 Conn. 438, 106 A. 323, 324, it is said that a passenger is not negligent for failing to observe how the car is being operated if he is "* * * asleep, or reading a book, or engrossed in talk with another than the driver, or in deep thought * * *."
But we see no reason for the application of the doctrine to such a case as this. Here plaintiff was seated on the front seat alongside her husband. She does not claim that she was reading or was asleep, nor that for any other proper reason she was not familiar with what was occurring. In fact, while she does not say that she was watching her husband and was watching the road ahead, she does give evidence which warrants the conclusion that she had focused her attention on him and on the road. She said that there was nothing that her husband did that might have caused the accident.
The reasons for the application of the doctrine of res ipsa loquitur are easily understood and have been set forth in many decisions of our Supreme Court, all of the Courts of Appeal and in practically all other jurisdictions. For instance, in Cavaretta v. Universal Film Exchanges, Inc., et al., La.App., 182 So. 135, 138, our Brothers of the First Circuit said: "In order to invoke the rule of res ipsa loquitur it must be shown, first, that the thing which caused the injury complained of was under the control and management of the defendant or his servants, and second, that the accident was such as in the ordinary course of events does not happen if due care has been exercised. Moreover, the facts surrounding the accident must be peculiarly within the knowledge of the defendant and not equally accessible to plaintiff."
It is this last requirement which, according to counsel for defendant, is not met in the case at bar. Can it be said that the facts surrounding the accident were "not equally accessible to plaintiff"?
*110 In Corpus Juris, Vol. 45, p. 1205, 65 C.J. S., Negligence, § 220(5), it is said that the doctrine has no application "if plaintiff himself has equal or superior means of information, * * *".
We ourselves have discussed the doctrine in several cases, notably Monroe v. D'Aunoy, La.App., 143 So. 716.
Our view that the doctrine cannot be applied indiscriminately in all automobile guest passenger cases finds support in an article which appears in 4 L.L.R., at page 105, in which the author says: "The most misleading group of res ipsa loquitur cases in Louisiana are those which contain broad statements entirely by way of dicta to the effect that a passenger in a private automobile who is injured in virtually any sort of mishap can rely upon the doctrine. These cases are numerous, but without exception they either disclose detailed evidence of negligence or the circumstances surrounding the accident were such that carelessness on the part of the driver could readily be inferred. Injuries to passengers in private vehicles can be inflicted under a wide range of circumstances, some of which may give rise to a ready inference of negligence, while others do not. The generalities on res ipsa loquitur often indulged by the courts in these cases add little weight to the decision."
Since we are strongly of the opinion that the doctrine of res ipsa loquitur is not applicable, we feel that there can be no recovery since plaintiff has not alleged and has not proved the negligent act which caused the accident and since the only specific charge of negligence which is made is not in the slightest degree sustained by the evidence.
However, lest it be felt that although the doctrine of res ipsa loquitur is not applicable and although the sole charge of negligence has not been sustained, there may be in the record evidence not objected to which discloses facts evidencing the negligence of plaintiff's husband, we deem it advisable to go into the evidence in an effort to determine whether from the record plaintiff's husband was guilty of negligence which proximately caused the accident.
In her testimony on the witness stand, plaintiff said that her husband was not driving too fast and that she did not notice anything about the road which indicated that it was dangerous. She says that she noticed no ruts and didn't see anything that could be called loose gravel.
In his testimony on the stand, plaintiff's husband said that he was driving slowly; that the road was a dirt gravel road "like any other country road"; that there were some spots where there were triple ruts and some places in which the gravel "was washed away by rain."
Surely, then, there is nothing in the testimony of either which can be pointed to as showing any particular act of negligence on the part of the operator of the car. However, shortly after the accident plaintiff's husband wrote to the agent of the defendant insurer a letter in which he reported the occurrence and in which he stated that the road was a dirt gravel road, poorly maintained, with deep ruts and loose gravel.
As a result of that letter defendant sent an adjuster to obtain statements from both Mr. and Mrs. Hebert. These statements, over the objection of counsel for plaintiff, were admitted in evidence and are in the record. We shall later discuss the reasons given by counsel for objecting to the admissibility of the two statements.
In his written statement, plaintiff's husband said: "There are triple ruts with loose gravel." And he added that for this reason "I was driving carefully." He also said: "* * * when about fifty feet from the most hazardous part of this road for some unknown reason my wheels caught in the gravel and took for the left side, * * *".
In the written statement signed by plaintiff, she did not set forth the cause of the accident, but said that she had seen her husband's statement and that "it was true and correct."
The objection to the statement made by plaintiff's husband was based on the fact that her husband had been placed on the witness stand by the defendant. Counsel for plaintiff argued that the statement was *111 offered for the purpose of impeaching plaintiff's husband and that defendant could not be heard to impeach or to contradict its own witness.
In Bartholomew v. Impastato, 12 So.2d 700, we found a similar situation. There we relied on the written statement which had been made by a hostile witness rather than on the testimony given on the stand by that witness.
In 70 Corpus Juris, Verbo Witnesses, section 1229, page 1037, we find the following: "Although there is authority to the effect that under the general rule that one cannot impeach his own witness by his inconsistent or contradictory statements, a party cannot impeach his own witness notwithstanding he proves to be a hostile witness, ordinarily, a party who has introduced an adverse or hostile witness may impeach him by proof of contradictory statements, where the evidence which has been given by the witness is prejudicial to the party calling him. * * *"
There can be no doubt at all from a reading of the testimony given by plaintiff's husband that he was most hostile to the cause of defendant. In fact, in effect he said that if he had realized what the effect of his written statement might be when he made it, he would have made a quite different statement. But whether the statement be admissible as coming from a hostile witness, we are quite certain that it was admissible because it was, in effect, made a part of the statement of the plaintiff herself who, in her own statement, referred to it as being true and correct. Of course, counsel for plaintiff contends that plaintiff herself either did not make any such statement or should not be bound by it. His contention is that the signature, which appears at the end of the statement, is not that of plaintiff. He also contends that plaintiff was under the influence of opiates.
The evidence convinces us beyond any possible doubt that the statement was read to plaintiff before she signed it; that she actually signed it; that she knew what she was signing, and that, at the time, she was not under the influence of opiates.
When counsel for plaintiff, in objecting to the admissibility of the statement, said that the witness, if she signed the statement, was under the influence of opiates, the Court stated: "There is no testimony in the record at the present time that the lady was under opiates."
From the written statements, as well as the oral testimony of the witnesses, we conclude that in the highway there were ruts and loose gravel and that although they were obvious to some extent, the road was not apparently so dangerous that plaintiff's husband was at fault in attempting to negotiate it at the slow speed at which he was going and without grasping his steering wheel even more firmly than he did. It is very difficult in cases of this kind to determine just where to draw the dividing line between those in which the operator of a car should have realized the danger of driving over ruts or loose gravel or both, or over slippery pavement, and those in which though there were obviously ruts and gravel, their appearance was not such as to make it proper to say that the driver should not have attempted to proceed as he did.
A typical case in which the driver of a car should have appreciated the danger and should have been even more careful than he was is Richard v. Roquevert, La. App., 148 So. 92, 93. There the defendant admitted that he saw a ridge in the road; "that he did not slacken the speed of his car in attempting to cross the ridge and that if he had reasonably reduced his speed the accident would not have occurred."
As illustrative of situations in which the driver exercised all proper care and yet could not avoid an accident caused by a road condition, the seriousness of which was not appreciated, we cite Monroe v. D'Aunoy, La.App., 143 So. 716 and Banta v. Moresi, 9 La.App. 636, 119 So. 900.
Here we think that although it is obvious that there were ruts which were covered or partially covered by loose gravel, this condition did not appear sufficiently dangerous to require that plaintiff's husband be even more careful than he was.
*112 In other words, we believe that an ordinarily prudent person would have driven over the road just as plaintiff's husband did. And plaintiff herself thought that he was not negligent in proceeding as he did, for she so stated.
The mere fact that the front wheels skidded, or were caught and deflected by the loose gravel or by the ruts is not in itself conclusive proof of negligence on his part.
In Monroe v. D'Aunoy, supra [143 So. 720], appears the following:
"That skidding may occur without fault has been many times held. In Barret, et al. v. Caddo Transfer & Warehouse Co., Inc., 165 La. 1075, 116 So. 563, 564, 58 A.L.R. 261, our Supreme Court said:
"`It is settled that the mere fact that an automobile skidded is not evidence of negligence. Berry on Automobiles, § 156; Huddy on Automobiles, § 336; Cyc. on Automobile Law, p. 269.'"
Since the operator of a vehicle is not the insurer of the safety of his guest passenger, there is no liability if the operator exercises ordinary care, and we feel that plaintiff's husband did exercise ordinary care.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.