CULPEPPER, Judge.
This is a suit for damages for personal injuries. The plaintiffs are Vincent J. Schaubhut, individually, and as administrator of the estate of his minor son, Douglas Schaubhut, and Mrs. Gloria Schaubhut, wife of the said Vincent J. Schaubhut. Defendants are Warren A. Guidry, driver of the truck involved in the accident, Ryder Truck Lines, Inc., owner of the truck, and Liberty Mutual Insurance Company, liability insurer of the truck. A judgment for the plaintiffs was rendered by the district judge. However, the plaintiffs appealed, asking increases in the awards. Defendants answered the appeal, seeking a reversal of the lower court judgment and alternatively reductions of the awards.
The facts are that on January 9, 1962 at about 9:00 p. m. a Ford station wagon, driven by Mr. Schaubhut and occupied by his wife and minor son as passengers, was proceeding in a northerly direction on U. S. Highway 167 as it entered the town of Opelousas. They came to the T-intersection of North Main Street with U. S. Highway 167, at which is located a traffic signal light. There is some dispute as to whether the light was red or green as Schaubhut approached, but, as will be shown hereinafter, we think this factual issue is immaterial to a decision of the case. In any event, the Schaubhut vehicle passed through the intersection and proceeded north on Highway 167, approaching a curve of said highway to the northeast. The weather had been extremely bad. Sleet and ice covered the highway and the surrounding area. When the Schaubhut vehicle reached a point about 150 to 200 feet beyond the intersection, a large truck and trailer of defendant, Ryder Truck Lines, Inc., was approaching from the north in the curve, which is banked so that the westerly side of the highway, or the outside of the curve, is higher than the easterly side. As the truck came around the curve, the driver *348 applied his brakes, allegedly in order to stop for the traffic signal at the intersection, which had turned red. When he did this, the rear end of the trailer slid on the ice downgrade across the northbound lane of traffic, immediately in front of the Schaub-hut vehicle. Mr. Schaubhut moved as far off the right side of the highway as he could, but was unable to prevent the rear end of the trailer striking the left front of the station wagon.
The plaintiff argues that since this type of accident is one which ordinarily would not occur in the absence of negligence and since the truck was in the exclusive control of the defendant’s driver, the evidentiary rule of res ipsa loquitur should be applied so as to create a presumption of negligence on the part of the defendant, requiring defendant to show freedom from negligence. Larkin v. State Farm Mutual Automobile Ins. Co., La.App., 91 So.2d 94.
The doctrine of res ipsa loquitur cannot be applied here because of the established jurisprudence of this state holding that skidding may occur without fault. In the very similar case of Barret v. Caddo Transfer & Warehouse Company, 165 La. 1075, 116 So. 563, 58 A.L.R. 261 (1928) a heavy truck going downgrade, on an admittedly slippery street, at a speed of 8 to 10 miles per hour, turned sharply to the right and skidded into plaintiff’s building. In refusing to apply tire doctrine of res ipsa loquitur the court held as follows:
“It is settled that the mere fact that an automobile skidded is not evidence of negligence. Berry on Automobiles, § 156; Huddy on Automobiles, § 336; Cyc. on Automobile Law, p. 269.
“As is well said in Linden v. Miller, 172 Wis. 20, 177 N.W. 909, 12 A.L.R. 665:
“ ‘Skidding may occur without fault, and when it does occur it may likewise continue without fault for a considerable space and time. It means partial or complete loss of control of the car under circumstances not necessarily implying negligence. Hence plaintiff’s claim that the doctrine of res ipsa loquitur applies to the present situation is not well founded. In order to make the doctrine of res ipsa loquitur apply, it must be held that skidding itself implies negligence. This it does not do. It is a well-known physical fact that cars may skid on greasy or slippery roads without fault either on account of the manner of handling the car or on account of its being there.’ ”
Subsequent cases following this holding are Siren v. Montague, 142 So. 196 (Orleans App.1932); Ledet v. Gottleber, 143 So. 71 (Orleans App.1932); Monroe v. D’Aunoy, 143 So. 716 (Orleans App.1932); Provosty v. Christy, 152 So. 784 (Orleans App.1934); Leitz v. Rosenthal, 166 So. 651 (Orleans App.1936); Harrelson v. McCook, 198 So. 532 (2nd Cir.App.1940); Hebert v. General Accident Fire & Life Assurance Corporation, 48 So.2d 107 (Orleans App.1950).
Plaintiff argues next, that even if the doctrine of res ipsa loquitur does not apply, there is applicable here the established jurisprudence that a motorist, who is on the wrong side of the road at the time a collision occurs, is presumed to be negligent and the burden is upon him to show circumstances justifying his being in the wrong lane of traffic. See Noland v. Liberty Mutual Insurance Co., 232 La. 569, 94 So.2d 671 (1957) and the cases cited therein. In answer to this argument, the defendant cites several cases from the courts of other states holding that where a motorist’s presence on the wrong side of the street is caused by skidding across the center line, there is no presumption of negligence. Herman v. Sladofsky, 301 Mass. 534, 17 N.E.2d 879; Freeport Motor Casualty Co. v. Chafin, (1960) 131 Ind.App. 362, 170 N.E.2d 819. See also the discussion and annotation in Blashfield, Cyclopedia of Automobile Law and Practice, Sec. 653.
We have found no Louisiana cases on this precise point, but we have found the case of Bergstrom v. Ove, 39 Wash.2d 78, *349 234 P.2d 548, which holds that skidding into the wrong side of the highway results in a violation of the law of the road, which requires an excuse and establishes a prima facie case of negligence. It is our opinion that this holding is more logical than those of the cases cited by the defendant. We see no logical reason why an exception to the general rule, as stated in the Noland v. Liberty Mutual Insurance Co. case, supra, should be established in cases where a vehicle skids across the center line onto the wrong side of the highway. The offending motorist should be required to explain why he started skidding and why he continued to skid into the improper lane. He is in a better position than anyone else to give this explanation. The motorist traveling in his proper lane, in many cases, may not know what caused the other vehicle to start skidding. If the motorist who is in the wrong lane can show that he started skidding through no fault of his own and thereafter was unable to avoid skidding into the improper lane, then he would perhaps not be found negligent. But, the burden should be on him to justify his being on the wrong side of the road, whether he skidded there or drove there intentionally.
The truck driver tried to justify his being in the wrong lane of traffic, by stating that he was traveling at a reasonable speed of 15 to 20 miles per hour when the traffic light ahead of him turned from green to red, requiring that he apply his brakes. This resulted in his trailer skidding and jackknifing across the center line of the highway. We do not think the truck driver’s explanation shows him to be free of negligence. He knew, or certainly should have known, that the highway was covered with ice and was extremely slippery. Several witnesses testified that the entire area was covered with sleet and ice. This was not a situation where a motorist suddenly came upon a slippery condition in the highway. Furthermore, the truck driver knew, or should have known, that the traffic light ahead of him might turn red, requiring that he stop. His effort to stop was not required by a sudden emergency,, created without fault on his part. We think that a reasonably prudent driver of such a heavy truck should have known that if, while driving without chains at a speed of 15 to 20 miles per hour, around a banked curve, on a highway covered with ice, he had to stop for a traffic signal ahead, the truck and trailer might slide on the ice downgrade. We think a reasonably prudent driver would have foreseen the hazard. The facts are very similar to the case of Barret v. Caddo Transfer & Warehouse Company, supra, where our Supreme Court, although refusing to apply the doctrine of res ipsa loquitur, found the defendant truck, driver guilty of negligence, where he knew the street was slippery and the grade was downward, yet tried to turn his truck while-traveling at a speed of 8 to 10 miles per hour.
We pass now to the issue of quantum. The lower court awarded $1,397.30 for medical expenses and other special damages. This award is not seriously disputed. For pain, suffering and disability the lower-court awarded Mr. Schaubhut $5,500, Mrs. Schaubhut $1200, and the minor, Douglas-Schaubhut, the sum of $200.
Immediately after the accident, all three-members of the Schaubhut family were-seen by Dr. Emil K. Ventre, a general practitioner in Opelousas. Mr. Schaubhut complained of pain in his neck and in his-low back and of minor bruises. The first x-rays taken revealed no fracture or dislocation of bones. Mr. Schaubhut was given' some pills for pain and was released. About ten days later he returned to Dr. Ventre complaining of pain in the low back. New x-rays revealed a compression fracture of the first lumbar vertebra, for which he was-hospitalized and required to remain in bed' about ten days and then was fitted with a. jewett-type brace. Under this treatment, the fracture of L-l healed, but after about four months Mr. Schaubhut again returned' to Dr. Ventre complaining of pain. At this-time Mr. Schaubhut was referred to Dr.. Meuleman, an orthopedic specialist of La *350 fayette, who found that, due to tissue damage at the site of the fracture, a considerable amount of spuring was taking place, with the possibility that L-l, the fractured vertebra, might, by natural processes, become fused with the vertebra immediately above it. This natural fusion was to be desired in order to immobilize the injured vertebra.
Dr. Meuleman continued to see Mr. Schaubhut for low back pain. He actually •found muscle spasm as late as December 3, 1962, which was approximately 11 months after the accident. Complete fusion of the vertebrae, unfortunately, did not occur. It was Dr. Meuleman’s opinion that due to these large hyperthrophic spurs, which caused nerves in the area to be pressed or pinched, Mr. Schaubhut was 25% disabled by pain in his low back. Dr. Meule-man did not think that this condition would improve, but on the contrary that it would become worse and that finally the pain might become so severe that fusion of the vertebrae by surgical means might become necessary.
On December 7, 1962, which was about a month before the date of the trial in the lower court, Mr. Schaubhut was examined by Dr. Guy Dunning, a witness for the defendant. Dr. Dunning’s opinion is in serious conflict with that of Dr. Meuleman. Although Dr. Dunning found the healed compression fracture at L-l, and the spurs which had grown out into the surrounding tissue, he was of the opinion that these spurs did not cause pain because they are located on the frontal side of the vertebra whereas the nerves are located on the rear. Dr. Dunning could find no evidence of any injury to the intevertebral disc. It was Dr. Dunning’s conclusion that the effects of this fracture had now become “consolidated” and that Mr. Schaubhut could return to his occupation as a boiler tender without future trouble except perhaps occasional discomfort.
Dr. Ventre, the treating physician, was essentially of the same opinion as Dr. Meul-eman, i. e., that Mr. Schaubhut is now disabled from the pain in his back and that the condition will worsen in the future, due to increased arthritic changes.
We think the evidence shows Mr. Schaubhut recovered from his slight “whiplash” injury after a few weeks. This was a minor part of his injury.
The record also shows that Mr. Schaub-hut is 38 years of age and is by trade a boiler tender. Approximately 1 month after the accident he returned to this type of work and, with the exception of a few brief periods, has worked continuously ever since. Of course, the defendant argues that Mr. Schaubhut’s return to this rather strenuous type of work is strong evidence that he is not suffering much pain. However, plaintiff points out that Mr. Schaubhut has worn his back brace off and on during all of this period of time.
In his written opinion, the trial judge mentioned the conflict in the testimony of the two orthopedic specialists and concluded that under all of the evidence, as substantially set out above, an award of $5,500 is appropriate. Of course, if Dr. Meuleman is correct in his opinion that Mr. Schaubhut is now 25% disabled due to pain in his back and that the condition will worsen in the future, then the award of $5,500 is too low. See Gaspard v. Lemaire, 146 So.2d 467 (3rd Cir.App.1962) where the court awarded $19,500 for a compression fracture of a vertebra resulting in permanent 25-30% disability of the back. However, if Dr. Dunning is correct in his opinion that Mr. Schaubhut has now recovered from the fracture, except for possible occasions of discomfort in the future, then the award is adequate. See Jackson v. Young, 99 So.2d 400 (1st Cir.App.1957) where the court awarded $4,526.70 for a fractured first lumbar vertebra from which substantial recovery was predicted after 18 months. The burden of proof is on the plaintiff to show facts warranting the award. Under the circumstances we are unable to say that the trial judge has committed manifest error.
*351 As to Mrs. Schaubhut, the evidence shows she received a large bruise on the hip and a low back sprain, both of which cleared up after about 3 months. The award of $1,200 to her was neither inadequate or excessive.
The minor, Douglas Schaubhut, received only minor bruises. The award of $200 in his favor appears to be appropriate.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiffs appellants.
Affirmed.